**Sondra W. HYMAN, et al., Plaintiffs,**

v.

**FIRST UNION CORP., et al., Defendants.**

**No. CIV. A. 94–1043(RCL).**

United States District Court, District of Columbia.

Sept. 26, 1997.

Paul C. Sprenger, Sprenger & Lang, P.L.L.P., Minneapolis, MN, Jane Lang, Timothy B. Fleming, Michael D. Lieder, Washington, DC, for Plaintiffs.

J. Thomas Kilpatrick, Christine M. Maclver, Atlanta, GA, Francis C. Clark, Charlotte, NC, for Defendants.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This is an action for age discrimination brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., by 93 terminated employees permitted to proceed collectively by this court against defendants. Plaintiffs contend, in part, that defendants' selection procedures, though neutral on their face, resulted in the discharge of a disproportionate number of workers over the age of forty and thus, assert a disparate impact claim under the ADEA. Upon consideration of the written submissions of parties, oral arguments, and the relevant law, this court grants defendants' motion to dismiss since this court concludes that a claim of liability based on a disparate impact theory is not cognizable under the ADEA.

I. Background

The factual and procedural background of this case is as follows. In 1992 and 1993, defendant First Union[1] acquired three banking institutions in Virginia, Maryland, and Washington, D.C. Two of the institutions employed plaintiffs bringing this action: First American Metro Corp. and its subsidiary Mentor Savings, F.A. Plaintiffs allege that as part of the acquisition process, First Union

1. Plaintiffs have named First Union Corp., First Union National Bank of Virginia, First Union National Bank of Maryland, First Union National Bank of Washington, D.C., and First American Metro Corp., as defendants. The court will refer to defendants collectively as First Union.

relied on selection procedures resulting in the termination of a disproportionate number of individuals over forty years of age, black, and of foreign origin. Plaintiffs further contend that First Union promised the displaced-employees "priority consideration" for other positions, but subsequently disregarded that promise and severed most of these employees. Finally, plaintiffs allege that the employees selected to replace those laid off were almost exclusively under forty years of age and white.

In a memorandum opinion issued August 12, 1997, —— F.Supp. —— (*"Hyman I"*), this court granted plaintiffs' motion to maintain two collective actions, but reserved ruling upon the proposed class actions. In another such opinion issued August 27, 1997 (*"Hyman II"*), this court granted summary judgment for defendants on plaintiffs' state law breach of contract claims, and denied as moot plaintiffs' motion to maintain the contract claims as a class. In a memorandum opinion issued September 2, 1997 (*"Hyman III"*), this court granted defendants' motion for summary judgment on plaintiffs' Reston Servicenter ethnic discrimination claims and denied as moot plaintiffs' motion to maintain the Reston Servicenter claims as a class action. In that same opinion, the court also granted plaintiffs' motion to maintain a consolidated action for all black branch managers alleging employment discrimination and reserved ruling on defendants' remaining motions for summary judgment. On August 7, 1997, defendants moved to dismiss claims of age discrimination brought by plaintiffs based on a disparate impact theory of liability under the ADEA. Presently, the court turns its attention to the issue presented in this motion.

## II. Discussion

### Motion to Dismiss

As stated, plaintiffs allege a violation of the ADEA based, in part, on a disparate impact

theory of liability. Defendants have moved to dismiss this claim pursuant to Rule 12(b)(6), asserting that the disparate impact theory of liability is not available under the ADEA. When asserting a motion to dismiss under Rule 12(b)(6), plaintiffs' factual allegations must be presumed true and should be liberally construed in favor of plaintiffs. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should be dismissed only if it appears beyond doubt that no set of facts proffered in support of plaintiffs' claim would entitle them to relief. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### Application of Disparate Impact in ADEA Cases

The ADEA makes it unlawful for an employer to discriminate against any employee or potential employee on the basis of age except "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). The ADEA draws its coverage and substantive provisions predominantly from Title VII. As the Supreme Court has recognized, "the prohibitions of the ADEA were derived *in haec verba* from Title VII." *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).[2]

---

**2.** Specifically, the ADEA provides that:

    (a) It shall be unlawful for an employer—

    (1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]

    (2) to limit, segregate, or classify his employees in any way which would deprive or tend to

deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age
29 U.S.C. § 623(a).

    The prohibitory language in Title VII is virtually identical, with the exception of the identification of the protected status:

    (a) It shall be an unlawful employment practice for an employer—

The Supreme Court has fashioned two separate models whereby an aggrieved individual may seek to redress a claim of discrimination—the disparate treatment and the disparate impact theories of liability. A disparate treatment claim will lie when an individual is treated differently by an employer on the basis of a protected characteristic. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977). It is well-settled that such a claim is cognizable under the ADEA. *See, e.g., Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120–25, 105 S.Ct. 613, 621–24, 83 L.Ed.2d 523 (1985) (affirming ADEA liability under disparate treatment theory).

In contrast, a disparate impact claim exists when an employment practice, though neutral on its face in its treatment of different groups, falls more harshly on one group than another and cannot be justified by business necessity. Unlike a disparate treatment claim, plaintiffs asserting a disparate impact claim need not establish a discriminatory motive on the part of the employer. The theory of disparate impact liability has its roots in the Supreme Court's decision in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), decided seven years after the passage of Title VII and four years after the passage of the ADEA. In *Griggs*, the Court held that the use of a facially neutral objective test that tended disproportionately to exclude African–Americans from the employment pool but did not measure skills demonstrably related to job performance violated Title VII's anti-discrimination provisions. *Id.* at 436, 91 S.Ct. at 856. Congress later codified the disparate impact theory of liability with respect to Title VII when it enacted the Civil Rights Act of 1991. *See* Pub.L. No. 102–166, § 3, 105 Stat. 1071 (1991) (listing as one of its purposes "to confirm statutory authority and provide guidelines for the adjudication of disparate

impact suits under Title VII"). No similar amendments recognizing disparate impact liability have been made to the ADEA.

Although Title VII analysis has been applied to cases brought under the ADEA in numerous contexts, whether the disparate impact theory should be extended to claims under the ADEA remains an open question. The Supreme Court has noted that "[t]here are important similarities between [Title VII and the ADEA], . . . both in their aims—the elimination of discrimination in the workplace—and their substantive prohibitions." *Lorillard*, 434 U.S. at 584, 98 S.Ct. at 872. However, in *Hazen Paper Co. v. Biggins*, the Court expressly stated that it has "never decided whether a disparate impact theory of liability is available under the ADEA." 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). *See also Markham v. Geller*, 451 U.S. 945, 948, 101 S.Ct. 2028, 2030, 68 L.Ed.2d 332 (1981) (Rehnquist, J. dissenting from a denial of certiorari) (indicating that "[t]his court has never held that proof of discriminatory impact can establish a violation of the ADEA").

Additional language in the Court's opinion in *Hazen Paper*, though, casts considerable doubt on the availability of a disparate impact theory of liability under the ADEA. In that case, the plaintiff alleged that his termination violated the ADEA under a disparate treatment theory of discrimination, in part, because it interfered with the vesting of his pension benefits. In discussing liability under the ADEA, the Court stated that "[d]isparate treatment . . . captures the essence of what Congress sought to prohibit in the ADEA." 507 U.S. at 610, 113 S.Ct. at 1706. Furthermore, the Court noted that "[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with age." *Id.* Justice Kennedy's concurrence in *Hazen Paper*, joined by

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way

which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(a).

Chief Justice Rehnquist and Justice Thomas, cautioned against extending disparate impact liability to the ADEA. "[N]othing in the Court's opinion should be read as incorporating in the ADEA the so-called 'disparate impact' theory of Title VII ... there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at 618, 113 S.Ct. at 1710.

Despite this language in *Hazen Paper,* some courts have continued to hold that disparate impact claims are viable under the ADEA. These courts typically continue to rely on pre-*Hazen Paper* precedent without engaging in a thorough examination of the issue. *See, e.g., Criley v. Delta Air Lines, Inc.,* 119 F.3d 102, 105 (2d Cir.1997) ("Although the Supreme Court has never decided whether a disparate impact theory of liability is available under the ADEA ... in our circuit, we have recognized such an action."); *District Council 37 v. New York City Dep't of Parks & Recreation,* 113 F.3d 347, 351 (2d Cir.1997) (relying on pre-*Hazen Paper* precedent and concluding that disparate impact claims are still cognizable under the ADEA); *Smith v. City of Des Moines, Iowa,* 99 F.3d 1466, 1470 (8th Cir.1996) (concluding that "disparate impact claims under the ADEA are cognizable"); *Mangold v. California Pub. Util. Comm'n,* 67 F.3d 1470, 1474 (9th Cir.1995) ("[E]xisting Ninth Circuit precedent approves of disparate impact theory under the ADEA.").

Other courts, including the D.C. Circuit, have followed an alternate approach whereby they assume that these claims are viable and then determine whether a prima facie case has been established when such an assumption is not dispositive of the case. *See Koger v. Reno,* 98 F.3d 631, 639 (D.C.Cir.1996); *Arnold v. United States Postal Serv.,* 863 F.2d 994, 998 (D.C.Cir.1988).

Finally, a growing number of courts, having thoroughly examined the issue, have interpreted *Hazen Paper* as "cast[ing] doubt on the viability" of disparate impact claims under the ADEA. *Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1007 (10th Cir.1996) (holding that "disparate impact claims are not cognizable under the ADEA"), *cert. de-*

*nied,* —— U.S. ——, 116 S.Ct. 2500, 135 L.Ed.2d 191 (1996); *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 732 (3d Cir. 1995) ("[I]n the wake of *Hazen,* it is doubtful that traditional disparate impact theory is a viable theory of liability under the ADEA."), *cert. denied,* 515 U.S. 1159, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *Gehring v. Case Corp.,* 43 F.3d 340, 342 (7th Cir.1994) ("[Plaintiff] was not trying to show that the reduction in force had a disparate impact on Case's older employees—a theory of age discrimination that is unavailable in this circuit, *EEOC v. Francis W. Parker Sch.,* 41 F.3d 1073 (7th Cir.1994)."), *cert. denied* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995); *Fobian v. Storage Tech. Corp.,* 959 F.Supp. 742, 747 (E.D.Va.1997) ("[E]very circuit which has addressed the issue on the merits has interpreted *Hazen* as prohibiting disparate impact claims under the ADEA."). A careful reading of the text and legislative history of the ADEA, a consideration of the policies underlying both the ADEA and the development of the disparate impact theory of liability, and emerging case law strongly support this approach.

The analysis of this issue begins with the text of the ADEA. Two specific provisions of this statute provide support for the conclusion that a claim of disparate impact is not cognizable under the ADEA: the language found in section 623(a), prohibiting discrimination on the basis of age, and the exception' to liability found in section 623(f), whereby the statute declares that it is not unlawful for an employer to take actions otherwise prohibited under the ADEA when such actions are based on reasonable factors other than age.

Turning first to the prohibitory language of the ADEA, the ADEA prohibits adverse employment decisions only when such decisions are made "because of such individual's age." The Tenth Circuit in *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir.1996), examined this language in a case involving a disparate impact claim under the ADEA brought by applicants who failed to meet United Air Lines weight requirements for flight attendants. The court held that ADEA claims could not be founded on a

disparate impact theory of liability and based this holding, in part, on its interpretation of the phrase "because of such individual's age." The court stated that "[i]t would be a stretch to read the phrase 'because of such individual's age' to prohibit incidental and unintentional discrimination that resulted because of employment decisions which were made for reasons *other than age.*" *Id.* at 1007 (emphasis in original). This court agrees with the reasoning employed by the Tenth Circuit in *Ellis.* The clearest and most logical reading of this language prohibits only intentional discrimination on the basis of age by an employer.

Plaintiffs assert that because the closely parallel language of Title VII has been the basis of a disparate impact analysis under that statute, the ADEA should also be read as supporting such a theory of liability. At first blush, there may appear to be a certain facial appeal to this argument. Indeed, in *Oscar Mayer & Co. v. Evans,* the Supreme Court acknowledged the parallel nature of the two statutes as "clear and convincing evidence" that Congress intended the parallel procedural provisions of Title VII and the ADEA to be similarly construed. 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–73, 60 L.Ed.2d 609 (1979). Moreover, the Court has recognized that "the ADEA and Title VII share a common purpose, the elimination of discrimination from the workplace." *Id.* at 756, 99 S.Ct. at 2071.

However, there are very strong reasons for affording these statutes distinct interpretations. Initially, it should be noted that the Supreme Court in *Griggs* did not base its decision on the text of Title VII. Although the Supreme Court has indicated in subsequent cases that the theory of disparate impact liability was derived from section 703(a)(2) of Title VII, *Connecticut v. Teal,* 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982), no such reference to the text of Title VII can be found in *Griggs.* Therefore, plaintiffs' reliance on a simple comparison of the language of the two statutes appears to be misplaced.

Clarification of the language of the ADEA and the extent of liability under the statute can be drawn from the statute's legislative history. During the congressional debates on the Civil Rights Act of 1964, amendments were proposed that would have included "age" as a protected class, thereby protecting age distinctions on a basis virtually identical to race, color, gender, religious, and national origin classifications. Congress rejected these proposals, 110 Cong. Rec. 2596–2599, 9911–9913, 13490–13492 (1964); EEOC, *Legislative History of the Age Discrimination in Employment* Act 5–14 (1981) (hereinafter *Legislative History* ), but did include a provision in Title VII directing the Secretary of Labor to "make a full and complete study of the factors which might tend to result in discrimination in employment because of age and of the consequences of such discrimination on the economy and individuals affected." § 715, 78 Stat. 265 (superseded by section 10 of the Equal Employment Opportunity Act of 1972, 86 Stat. 111). Congress also instructed the Secretary to report "such recommendations for legislation to prevent arbitrary discrimination in employment because of age as he determines advisable." *Id.* The resulting report compiled by the Secretary documented the problem of discrimination against older workers and was relied on by the Secretary in proposing the specific remedial legislation that ultimately became the ADEA. Report of the Secretary of Labor, *The Older American Worker: Age Discrimination in Employment* (1965) (hereinafter *Secretary's Report* ), *Legislative History* at 16–41. *See also EEOC v. Wyoming,* 460 U.S. 226, 229–31, 103 S.Ct. 1054, 1056–58, 75 L.Ed.2d 18 (1983) (discussing the legislative history of the ADEA and the importance of the Secretary's Report).

The Secretary's Report characterized the predominant form of discrimination facing older workers as "arbitrary discrimination"— discrimination based on misconceptions of older workers' abilities due to age and other age stereotypes. This type of discrimination was most commonly reflected in arbitrary age limits imposed in the hiring of employees without consideration of a particular applicant's individual qualifications. The Report distinguished between this arbitrary form of discrimination and obstacles encountered by older workers arising from factors that "af-

fect older workers more strongly, as a group, than they do younger employees." *Secretary's Report* at 5, 11. In this regard, the Secretary stated that "[t]o eliminate discrimination in the employment of older workers, it will be necessary not only to deal with overt acts of discrimination, but also to adjust those present employment practices which quite unintentionally lead to age limits in hiring." *Id.* at 22. While this language may appear to support a disparate impact theory of liability, the Secretary did not recommend that the proposed legislation prohibit such practices. Rather, the Secretary suggested that "special arrangements" be made to accommodate older workers through education, research, and the institution of programmatic measures designed to improve opportunities for older workers. *Id.* at 19, 21–25. Therefore, the Secretary's Report and the subsequent legislation drafted by Congress based on this report reflect a preoccupation, not with practices neutral on their face that have an adverse effect because of age, but rather with specific practices overtly restricting employment opportunities on the basis of age. *See Ellis,* 73 F.3d at 1007; *Fobian,* 959 F.Supp. at 747 (relying on *Ellis*). Employees seeking to demonstrate that such overt practices are discriminatory can do so adequately by asserting a claim under the disparate treatment theory of liability.

Further support for rejecting an extension of disparate impact liability can be drawn from the inclusion of section 4(f), 29 U.S.C. § 623(f), in the ADEA. Section 4(f) creates an exemption from liability making it lawful for an employer "to take any action ... where the differentiation is based on reasonable factors other than age...." Title VII contains no comparable provision. Plaintiffs asserting a claim under a disparate impact theory establish a prima facie case of liability by showing that an employer relied on a facially neutral practice demonstrated to be correlated with some protected trait. Thus, plaintiffs carry their initial burden without demonstrating employer reliance on such protected traits in the decision making process. The language of section 4(f)(1) which allows the use of "reasonable factors other than age" is not consistent with such a theory of liability and suggests that decisions made for reasons that are independent of age but which happen to correlate with age are not actionable under the ADEA. *Francis W. Parker School,* 41 F.3d 1073, 1077 (7th Cir. 1994), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995). A consistent reading of this language demonstrates that the exception is without meaning unless the prohibitions of the ADEA forbid disparate treatment and the aforementioned exception permits employer actions resulting in disparate impact. *Metz v. Transit Mix, Inc.,* 828 F.2d 1202, 1220 (7th Cir.1987) (Easterbrook, J. dissenting) (quoting Douglas Laycock, *Continuing Violations, Disparate Impact in Compensation, and Other Title VII Issues,* 49 L. & Contemp. Prob. 53, 55 (Aut.1986) (referring to similar language in the Equal Pay Act of 1963)). *See also DiBiase,* 48 F.3d at 734 ("[B]y the statutory language itself, Congress recognized that neutral policies not motivated by discriminatory intent may be permissible employment practices.... [A]pplication of disparate impact theory could lead to results which Congress probably did not intend.").

It is noteworthy that the Supreme Court has indicated that nearly identical language in the context of the Equal Pay Act, 29 U.S.C. § 206(d)(1), did not support a theory of disparate impact liability under that statute. The Equal Pay Act provides a statutory defense that allows employers to pay male and female employees differing wages where the differential is "based on any other factor other than sex." *Id.* The Court suggested that this language is inconsistent with the disparate impact theory of liability. *County of Washington v. Gunther,* 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981).[3] *See also Ellis,* 73 F.3d at 1008

---

**3.** Specifically, the Court stated:

More importantly, incorporation of the fourth affirmative defense could have significant consequences for Title VII litigation. Title VII's prohibition of discriminatory employment practices was intended to be broadly inclusive, proscribing not only overt discrimination but also practices that are fair in form, but discriminatory in operation. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971). The structure of Title VII litigation, including presumptions, burdens of proof, and de-

(reaching the same conclusion); *Francis W. Parker School*, 41 F.3d at 1077 (same).

Assuming a claim of liability based on the disparate impact theory was cognizable under the ADEA, it would not address practices based on erroneous stereotypes of those over forty and their ability to perform certain job tasks. Rather, it would eliminate neutral employment practices that happen to have a statistically adverse effect on those protected under the statute. Neither the text of the ADEA, nor its legislative history support such an expansive protection. As one court has stated "the primary purpose [of the ADEA] is to prohibit employers from acting upon the assumption that 'productivity and competence decline with age.'" *DiBiase*, 48 F.3d at 734 (quoting *Hazen Paper*, 507 U.S. at 610, 113 S.Ct. at 1706)). Moreover, the legislative history of the ADEA demonstrates a congressional focus on specific practices which clearly and intentionally restrict employment opportunities because of age and not with practices neutral on their face which have an adverse effect because of age.

In contrast, Congress enacted Title VII to eliminate all discrimination against protected classes in employment, and as a result, both the disparate impact and the disparate treatment theories of liability were necessary to achieve this end. The legislative history of the ADEA clearly indicates that this statute was meant to address only arbitrary discrimination, not facially neutral practices impacting older employees to a greater statistical degree than their younger counterparts. Thus, it cannot be reasonably concluded that Congress intended to establish disparate impact liability under the ADEA.[4]

Even if this court was not convinced by arguments based on the text and legislative history of the ADEA, the purposes and policies underlying both the ADEA and the Supreme Court's development of the disparate impact theory of liability in *Griggs* provide further support for the conclusion that disparate impact claims may not be brought under the ADEA. The *Griggs* decision reflected the Court's concern with the correlation between the history of educational discrimination against African–Americans and the use of this discrimination as a means of presently disadvantaging such individuals in the workplace. 401 U.S. at 430, 91 S.Ct. at 853. The Court also concentrated on eliminating arbitrary barriers to employment on the basis of these stereotypes, as they were unrelated to an individual's ability to perform a given job. *Id.* at 431, 91 S.Ct. at 853–54.

As the rationale of *Griggs* demonstrates, the disparate impact theory of liability under Title VII was developed, in part, because the individuals in its protected classes have traditionally been exposed to historical discrimination and prejudicial stereotyping. There is not as compelling a reason to require an employer to justify every employment practice that disproportionately affects workers covered under the ADEA. When a group of employees covered under the ADEA are adversely impacted by a facially neutral employment practice, it cannot be said that the particular practice perpetuates past discrimination, unlike the case in *Griggs*. The policy considerations underlying the holding in *Griggs* are simply not present in the context of the ADEA. In essence, *Griggs* reflected an assumption that facially neutral employment

---

fenses, has been designed to reflect this approach. The fourth affirmative defense of the Equal Pay Act, however, was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination. *Gunther*, 452 U.S. at 170, 101 S.Ct. at 2248.

4. Defendants also point to Congress' failure to amend the ADEA to include an express recognition of the disparate impact theory of liability in conjunction with the amendment doing so to Title VII in the Civil Rights Act of 1991 as evidence signaling its intent not to permit this theory of liability under the ADEA. This court refuses to draw any such inferences from this inaction by Congress. *See Schneidewind v. ANR Pipeline Co.*,

485 U.S. 293, 306, 108 S.Ct. 1145, 1153–54, 99 L.Ed.2d 316 (1988) (expressing the Supreme Court's reluctance to draw inferences from Congress' failure to act); *Hiatt v. Union Pac. R.R. Co.*, 859 F.Supp. 1416, 1434–35 (D.Wyo.1994) (refusing to rely on congressional inaction as a basis for its decision that disparate impact liability is not available under Title VII), *aff'd*, 65 F.3d 838 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996). *But see Ellis*, 73 F.3d at 1008 (indicating that Congress' subsequent amendments to Title VII and to the ADEA signal its intent not to provide for a disparate impact cause of action under the ADEA).

practices adversely impacting employees or applicants on the basis of race advanced prior historical discrimination.

The same assumption does not hold true with respect to the ADEA and its protected class. At some point in each person's life, it is very likely that there will be a direct correlation between age and ability to perform. While it may be improper to base an employment decision on this correlation under the ADEA, the correlation is not the result of some past history of discrimination. In fact, employees currently covered' under the ADEA may have even benefited from discrimination based on age at one time. In this regard, discrimination based on age can clearly be distinguished from other forms of discrimination. The essence of this distinction demonstrates why disparate impact liability is available under Title VII and not the ADEA. Indeed, "Congress itself recognized this distinction, for it provided in the ADEA that '[i]t shall not be unlawful for an employer . . . to take any action otherwise prohibited [by this section] where the differentiation is based on reasonable factors other than age. . . ." *DiBiase*, 48 F.3d at 734 (quoting 29 U.S.C. § 623(f)(1)).

The Supreme Court has also shed light on the unique nature of disparate impact liability under Title VII in *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). The Court noted that "[a] disparate-impact claim reflects . . . Congress' basic objective in enacting [Title VII]: 'to achieve equality of employment *opportunities* and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." *Id.* at 448, 102 S.Ct. at 2531 (emphasis in the original) (quoting *Griggs*, 401 U.S. at 429–30, 91 S.Ct. at 852–53). In further describing disparate impact claims under Title VII, the Court continued: "[w]hen an employer uses a non-job-related barrier in order to deny a minority or woman applicant employment or promotion, and that barrier has a significant adverse effect on minorities or women, then the applicant has been deprived of an employment *opportunity* 'because of . . . race, color, religion, sex or national origin.'" *Id.* (emphasis in original) (quoting section

703(a)(2) of Title VII). The same concerns are simply non-existent in the context of the ADEA, as by statute, employers may rely on reasonable factors other than age in making employment decisions regardless of whether such factors are job-related.

Additional distinctions between discrimination based on age and other types of discrimination can be drawn from the nature of the protected classes covered by Title VII and the ADEA. The Supreme Court has refused to equate the degree of discrimination encountered by older workers with the level of discrimination faced by other protected classes. In *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam), the Court held that a state statute establishing a mandatory retirement age of fifty for police officers did not constitute discrimination against a suspect class for purposes of the equal protection clause under the Fourteenth Amendment. In reaching this conclusion, the Court added that the elderly, as a group, "have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." *Id.* at 313, 96 S.Ct. at 2567. As one court has stated, "the *Murgia* Court . . . recognized that age is often a relevant indicator of job performance and is not a completely inapposite stereotype with no correlation to job performance." *Hiatt v. Union Pac. R.R. Co.*, 859 F.Supp. 1416, 1436 (D.Wyo. 1994), *aff'd*, 65 F.3d 838 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996).

The very nature of the classes protected under the ADEA and Title VII and the distinctive forms of discrimination these groups have faced provide additional support for refusing to recognize the viability of disparate impact claims under the ADEA. While efforts to eliminate discrimination based on age should be encouraged, a facially neutral employment practice which may affect those over the age of forty to a greater statistical degree than younger workers simply does not constitute discrimination under the ADEA.

**46**

Finally, emerging case law supports this court's conclusion that a claim of discrimination based on a disparate impact theory is not cognizable under the ADEA. Although the Supreme Court did not decide the issue in *Hazen Paper*, the language of that opinion can be read as suggesting that the ADEA does not support a theory of disparate impact liability. Most courts thoroughly considering this issue in light of *Hazen Paper* have reached a similar conclusion, while those courts continuing to recognize disparate impact liability under the ADEA generally do so in reliance on pre-*Hazen Paper* precedent.

III. Conclusion

In sum, the text and legislative history of the ADEA, when read in conjunction with the policies underlying this statute and the Supreme Court's development of the disparate impact theory of liability in *Griggs*, demonstrate that claims of discrimination based on disparate impact are not cognizable under the ADEA. Accordingly, defendants' motion to dismiss such claims pursuant to Rule 12(b)(6) is GRANTED.