Clemente **FEBRES MORALES,**
et al., **Plaintiffs,**

**v.**

**CHALLENGER CARIBBEAN CORP.,**
et al., **Defendants.**

**Civil No. 96–1798(HL).**

United States District Court,
D. Puerto Rico.

March 18, 1998.

Jose L. Gonzalez–Castaner, Gonzalez–Castaner, Morales & Guzman, San Juan, PR, Juan R. Gonzalez–Munoz, Gonzalez Munoz & Quinones Tridas, San Juan, PR, for Plaintiffs.

Francisco M. Ramirez–Rivera, Martinez, Odell & Calabria, San Juan, PR, for Defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for partial summary judgment filed by Defendants Thomas & Betts Corporation and Thomas & Betts Puerto Rico Corporation (collectively "T & B"). Thomas & Betts Corporation is a publicly owned corporation with its headquarters in Tennessee. Thomas & Betts Puerto Rico is one of its subsidiaries. Another subsidiary, Thomas & Betts Caribe, Inc., operates a plant in Vega Baja, Puerto Rico engaged in the manufacturing of electronic terminals and plastic components. Plaintiffs are nine individuals who claim that they were terminated from their positions in violation of the Age Discrimination in Employment Act of 1967 ("ADEA")[1] and Puerto Rico Law 100.[2] Plaintiffs have also brought a claim under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").[3] T & B does not seek summary judgment on the COBRA claims.

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). In February 1994, Thomas & Betts Corporation purchased Challenger Caribbean Corporation ("Challenger"). Challenger owned and operated manufacturing facilities in Canóvanas and Vega Baja, Puerto Rico. Plaintiffs were all "administrative" or non-union employees at the Canóvanas plant. In December 1994, it was announced that the Canóvanas plant would be shut down and its operations would be consolidated with the plant in Vega Baja.[4]

In April and May of 1995, Plaintiffs were dismissed from their positions at the Canóvanas plant. All Plaintiffs were over the age of forty at the time of their dismissal.[5] Ten other administrative employees were similarly denied positions in Vega Baja.[6] There were, however, seventeen other administrative employees from the Canóvanas plant who were offered work at the Vega Baja plant. Thirteen of them were over forty.[7] The T & B personnel who made the decisions on who should be dismissed were Frank Domenech, the plant manager for Thomas & Betts Caribe, Ojel Rodríguez, the plant manager for Challenger Caribbean, and Ramón Becker, the human resources manager for

---

1. 29 U.S.C.A. §§ 621–634 (West 1985 & Supp. 1997).

2. 29 L.P.R.A. §§ 146–151 (1995).

3. COBRA's provisions appear in ERISA, the Public Health Service Act, and the Internal Revenue Code. The provisions relevant to Plaintiffs' claims are 29 U.S.C.A. §§ 1132 & 1166 (West 1985 & Supp.1997).

4. Docket no. 56, at 39–42.

5. Docket no. 56, at 39–42. Plaintiffs' ages at the time of their dismissals were the following:

| | |
|---|---|
| Luis Zayas | 62 |
| Gloria Soto | 47 |
| José Pomales | 54 |
| Manuel Dalmau | 47 |
| Jesús Ortíz | 54 |
| Clemente Febres | 53 |
| Rafael Hiraldo | 46 |
| Emma Rovira | 43 |
| Camen López | 41 |

6. Docket no. 53, paragraph 34. The ages of the other employees who were not offered positions were the following:

| | |
|---|---|
| Carmen Torres Olivieri | 39 |
| William Vallelanes | 42 |
| Yvette Rosado | 39 |
| Nayda De La Rosa | 38 |
| Héctor Olivo | 56 |
| Anidalia Rivera | 55 |
| Carmen Negrón | 51 |
| Generoso Rodríguez | 44 |
| María de la Morales | 38 |
| Gloria Rosario | Age not given. |

7. Docket no. 53, paragraph 31. The ages of the employees who were offered work at the Vega Baja plant were the following:

| | |
|---|---|
| Rafael Berrios | 58 |
| Juan de Jesús | 47 |
| Martin González | 41 |
| Rafael Morales | 37 |
| Joann Quiñones | 28 |
| Sara Rivera | 47 |
| Ojel Rodríguez | 56 |
| Juan Martínez | 63 |
| Carlos Zayas | 58 |
| Mayra Cartagena | 30 |
| Aixa Dennis | 35 |
| Fernando López | 48 |
| Arcadio Mulero | 56 |
| José Luis Rivera | 45 |
| Virginia Rivera | 41 |
| Alfonso Dauway | 63 |
| Francisco Santiago | 63 |

Thomas & Betts Caribe.[8]

In their amended complaint, Plaintiffs allege that T & B's conduct violated the ADEA. They make claims based on both a disparate treatment theory and a disparate impact theory. They also claim that T & B's conduct violated Puerto Rico Law 100. T & B moves to dismiss these claims in its motion for partial summary judgment. Plaintiffs have opposed the motion. For the reasons set forth below, the Court grants in part and denies in part the motion.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the non-moving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

### 1. Disparate impact under the ADEA

In their fourth cause of action, Plaintiffs claim that even if T & B's conduct in its reorganization was uniformly applied, it had a disparate impact on employees over forty and therefore it violated the ADEA. A disparate impact claim is based on an employment practice which, although facially neutral, affects a protected group more harshly than other groups and which is not justifiable by a business necessity. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977); *Bramble v. Amer. Postal Workers Union*, 135 F.3d 21, 26 (1st Cir.1998). The plaintiff need not prove a discriminatory motive in a disparate impact claim. *Teamsters*, 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854–55 n. 15.

A Title VII plaintiff may bring a disparate impact claim. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); 42 U.S.C.A. § 2000e–2(k) (West 1994). Generally, the analyses of Title VII and the ADEA claims are interchangeable. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 n. 9 (1st Cir.1996); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 n. 4 (1st Cir.1996). With regard to disparate impact claims, however, it is unclear whether the two statutes should be treated equally. The Supreme Court has yet to make a definitive holding on whether a disparate impact claim may be brought under the ADEA. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) ("[W]e have never decided whether a disparate impact theory of liability is available under the ADEA."). Additionally, the First Circuit has yet to resolve this issue. *See Bramble*, 135 F.3d at 26. In a concurring opinion in the *Hazen Paper* decision, Justices Rehnquist, Kennedy, and Thomas cast doubt on the viability of a disparate impact claim under the ADEA. *See Hazen Paper*, 507 U.S. at 618, 113 S.Ct. at 1710 ("[T]here are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA."); *see also Markham v. Geller*, 451 U.S. 945, 947–48, 101 S.Ct. 2028, 2030, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from denial of certiorari and questioning whether a discriminatory impact claim may be brought under the ADEA).

In the wake of the *Hazen Paper* decision, a split has developed in the circuits over this

---

**8.** Docket no. 50, Counterstatement of Material Facts, paragraph 3.

issue. A number of courts have analyzed the ADEA's statutory language, legislative history, and policy and have concluded that the ADEA does not give rise to a disparate impact claim. *See Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1006–10 (10th Cir.1996); *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 732–34 (3rd Cir.1995) (Greenberg, J., concurring); *E.E.O.C. v. Francis W. Parker School,* 41 F.3d 1073, 1076–78 (7th Cir. 1994); *Hyman v. First Union Corp.,* 980 F.Supp. 38, 39–46 (D.D.C.1997); *Fobian v. Storage Technology Corp.,* 959 F.Supp. 742, 746–47 (E.D.Va.1997); *Martincic v. Urban Redevelopment Auth.,* 844 F.Supp. 1073, 1077–78 (W.D.Pa.1994); *but see Camacho v. Sears, Roebuck de Puerto Rico,* 939 F.Supp. 113, 118–22 (D.P.R.1996) (allowing a disparate impact claim under the ADEA). The courts that have found a disparate impact claim after *Hazen Paper* have generally done so in reliance on pre-*Hazen Paper* precedent or have done so without examining either the statute or the impact of the *Hazen Paper* opinion. *See District Council 37 v. New York City Dept.,* 113 F.3d 347, 351 (2nd Cir.1997) (relying on pre-*Hazen Paper* precedent); *Mangold v. California Public Utilities Comm'n,* 67 F.3d 1470, 1474 (9th Cir. 1995) (relying on one pre-*Hazen Paper* case and one post-*Hazen Paper* case which in turn relied only on pre-*Hazen Paper* precedent); *Houghton v. SIPCO, Inc.,* 38 F.3d 953, 958–59 (8th Cir.1994) (recognizing a disparate impact theory under the ADEA without explanation and without discussion of *Hazen Paper*); *Diehl v. Xerox Corp.,* 933 F.Supp. 1157, 1165–66 (W.D.N.Y.1996) (relying on pre-*Hazen Paper* precedent).

For the following reasons, this Court sides with those courts which have held that a disparate impact claim is not cognizable under the ADEA. First, and most importantly, the statute's language does not support a claim of disparate impact. Section 623(a), which defines what employer practices are unlawful, prohibits conduct which is done "because of [the] individual's age." 29 U.S.C.A. § 623(a)(1) & (2). Motive is not material to a disparate impact claim. *Teamsters,* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854–55 n. 15. Rather, the key question is only whether the challenged conduct more harshly affects one group than another. *Bramble,* 135 F.3d at 26. By contrast, the language in section 623(a) indicates that motive *is* material in an ADEA claim—an employer's conduct is unlawful if it is done *because* of the employee's age. The Court may not read into the ADEA a cause of action which does not jibe with the statute's language. *See Ellis,* 73 F.3d at 1007; *Hyman,* 980 F.Supp. at 41–42.

Second, the ADEA states that it shall not be unlawful for an employer

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age. . . .

29 U.S.C.A. § 623(f). The Equal Pay Act prohibits employers from discrimination based on sex in paying employees for equal work. 29 U.S.C.A. § 206(d)(1) (West 1978). This statute permits pay differentiations if they are "based on any other factor other than sex." *Id.* § 206(d)(1)(iv). This language is similar to the ADEA's language which permits a differentiation "based on reasonable factors other than age." The Supreme Court has held that because of the "based on any other factor other than sex" language in the Equal Pay Act, that statute—unlike Title VII—does not give rise to a disparate impact claim. *See County of Washington v. Gunther,* 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981). This similarity in language between the ADEA and the Equal Pay Act further supports a determination that the former statute does not provide for a disparate impact cause of action.[9] *See Ellis,* 73 F.3d at

9. In addition to sharing similar language, the Equal Pay Act and the ADEA are both related to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C.A. §§ 201–219 (West 1978 & Supp. 1997). The Equal Pay Act is an amendment to the FLSA, and a violation of the ADEA is considered a violation of the FLSA. *See* 29 U.S.C.A. § 626(b); *Flamand v. Am. Int'l Group, Inc.,* 876 F.Supp. 356, 362 (D.P.R.1994). Additionally, the ADEA incorporates remedial schemes from the

1008; *Francis W. Parker*, 41 F.3d at 1077; *Hyman*, 980 F.Supp. at 43–44.

 Lastly, in the 1991 Civil Rights Act, Congress amended Title VII so that it now explicitly provides for a disparate impact claim. *See* Pub.L. No. 102–166, § 105(a), 105 Stat. 1071, 1074–75 (1991), codified at 42 U.S.C.A. § 2000e–2(k). Congress has made no similar amendments to the ADEA. Absent an explicit Congressional instruction that a disparate impact claim should be permitted under this statute, the Court will not create one. *See Ellis*, 73 F.3d at 1008. Thus, based on the above-discussed reasons and the weight of the courts which have held that no disparate impact claim is cognizable under the ADEA, this Court agrees with those courts and holds that Plaintiffs may not bring a disparate impact claim based on the ADEA. Accordingly, the Court grants T & B's motion on this issue and dismisses the fourth cause of action in Plaintiffs' amended complaint.[10]

### 2. Disparate treatment

 Plaintiffs' first and second causes of action in their amended complaint are for disparate treatment. An employee making such a claim under the ADEA must demonstrate that he was treated adversely because of his age. *Hazen Paper*, 507 U.S. at 610, 113 S.Ct. at 1706; *Bramble*, 135 F.3d at 24. An ADEA plaintiff has the ultimate burden of proving that his age was the determinative factor in his dismissal. *Pages–Cahue v. Iberia Lineas Aereas de España*, 82 F.3d 533, 536 (1st Cir.1996). In other words, he must show that he would not have been terminated

but for his age. *Id.* To survive a motion for summary judgment, an ADEA plaintiff must either adduce direct evidence of discrimination or present circumstantial or indirect evidence to make out a prima facie case of discrimination under the burden-shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See Bramble*, 135 F.3d at 24.

 In the present case, Plaintiffs claim that there is direct evidence of T & B's discriminatory conduct. They cite to the deposition testimony of Ramón Becker. Becker was the human resources manager for Thomas & Betts Caribe. He stated that he asked Frank Domenech what the criteria were for deciding who would be transferred. Domenech was the plant manager at Thomas & Betts Caribe and one of the three persons charged with making these decisions. Becker testified that Domenech told him that the third criteria for determining whether to transfer an employee was whether the employee was old.[11] Plaintiffs claim that this testimony constitutes direct evidence of discrimination. T & B contests this assertion, claims that the testimony constitutes indirect evidence, and argues that the *McDonnell Douglas* framework should instead be used.

 As the First Circuit has noted more than once, the distinction between direct and indirect evidence is far from clear. *See Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir.1996); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95–96 (1st Cir.1996); *Smith*, 76 F.3d at 421. In the present case, the Court need not attempt to

---

FLSA. *See* 29 U.S.C.A. § 626(b); *Flamand*, 876 F.Supp. at 362.

10. Even if a disparate impact claim were cognizable, the Court would be compelled to dismiss the fourth cause of action. Generally, disparate impact claims are supported by statistics comparing a policy's effect on different groups. *Bramble*, 135 F.3d at 26; *Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1215 (7th Cir.1987) (Easterbrook, J., dissenting). In the present case, Plaintiffs have submitted no such statistical evidence. The evidence in the record—cited at footnotes 5, 6, and 7 above—on the ages of the Canóvanas plant's administrative employees who were and were not offered transfers belies Plaintiffs' disparate impact claim. The average age of the em-

ployees offered transfers is 48. The average age of those employees not offered transfers is 47.2. These numbers do not support a claim of disparate impact in T & B's transfers. Moreover, Plaintiffs have failed to address T & B's arguments on this issue altogether. A claim that is raised in the complaint but ignored at the summary judgment stage is deemed waived. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir.1995); *Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 65 (D.P.R.1996). Therefore, if such a claim were allowed, the Court would have to dismiss it because it lacks any evidentiary support and because it has been waived.

11. Docket no. 50, exhibit 5, at 50.

demarcate the boundary between direct and indirect evidence. In either case, whether the evidence presented is direct or indirect, a plaintiff must prove discrimination. *See Smith,* 76 F.3d at 421. The testimony by Becker is sufficient to enable Plaintiffs to survive summary judgment under either a direct or indirect evidence analysis. Domenech's alleged statement regarding what criteria were used was a remark by a decisionmaker, *see Gartman v. Gencorp, Inc.,* 120 F.3d 127, 131 (8th Cir.1997), in relation to the decision making process, *see Ayala–Gerena,* 95 F.3d at 96; that was contemporaneous to the decision making process, *see id.; Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996); and that age played a part in the decisional process, *see Ruiz v. Posadas de San Juan Associates,* 124 F.3d 243, 249 n. 10 (1st Cir.1997); *Smith,* 76 F.3d at 421. As such, this alleged comment creates a genuine issue of material fact as to T & B's motives in their dismissal of Plaintiffs. In its motion for summary judgment, T & B claims that Becker was a disgruntled ex-employee who has been discharged by the company and is therefore not credible. At the summary judgment stage, a court may not make credibility determinations. *Perez–Trujillo v. Volvo Car Corp.,* 137 F.3d 50, 52–54 (1st Cir. 1998). Therefore, the Court may not discredit Becker's testimony. Because Plaintiffs' evidence creates a genuine issue of material fact, the Court is compelled to deny the motion for summary judgment as to Plaintiffs' first and second causes of action.

 Plaintiffs in their opposition make much of the fact that T & B's decisions regarding who should be transferred and who should be dismissed were "arbitrary, capricious and criterialess." Plaintiffs claim that T & B was not entitled to engage in such conduct. In order to avoid at trial the presentation of evidence and issues which are not relevant to the present case, the Court finds it necessary to address Plaintiffs' claim that T & B's conduct was arbitrary and capricious. Courts hearing employment discrimination cases may not sit as super personnel departments to rule on the merits or rationality of an employer's nondiscriminatory business reasons. *Ruiz,* 124 F.3d at 250;

*Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir.1991). The court should be hesitant to substitute its views for those of the employer's personnel who are responsible for making employment decisions. *Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996). So long as the employer's actions are nondiscriminatory, the court cannot substitute its criteria for that of a company's legitimate management. *Pages–Cahue,* 82 F.3d at 538; *Foster v. Dalton,* 71 F.3d 52, 56 (1st Cir.1995); *Holt v. Gamewell Corp.,* 797 F.2d 36, 38 (1st Cir. 1986); *Lawton v. State Mut. Life Assurance Co. of America,* 924 F.Supp. 331, 344 (D.Mass.1996), *aff'd,* 101 F.3d 218 (1st Cir. 1996). An unfair employment decision by an irrational manager will, by itself, not be actionable; a cause of action will exist only if there was a discriminatory reason for the decision. *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994); *Lawton,* 924 F.Supp. at 344. So it is here. At trial Plaintiffs will have to establish not that T & B's decision to dismiss them was unfair or irrational. Rather, they will have to demonstrate that they were terminated because of an age-based discriminatory reason. The mere fact that some or all Plaintiffs would have been qualified for positions at the Vega Baja plant will not suffice.

### 3. Puerto Rico law claims

Plaintiffs' third cause of action alleges a violation of Puerto Rico Law 100. In the motion for summary judgment, T & B also requests the dismissal of this claim both because there is no evidence to support it and because this claim raises a novel or complex issue of local law and the Court should decline to exercise its supplemental jurisdiction over it. *See* 28 U.S.C.A. § 1367(c)(1) (West 1993). Plaintiffs fail to address these arguments in their opposition to the motion for summary judgment. As stated above, a claim that is raised in the complaint but ignored at the summary judgment stage is deemed waived. *Grenier,* 70 F.3d at 678; *Nieves Domenech,* 952 F.Supp. at 65; *see also Pages–Cahue,* 82 F.3d at 535 n. 1 (Holding that a plaintiff waives a state law claim when he fails to raise it in a brief). Because

Plaintiffs have waived this claim, the Court grants T & B's motion for summary judgment on this issue.

 Lastly, the Court notes that Plaintiffs claim that T & B has destroyed evidence. A court may exclude evidence or sanction a party that has damaged or destroyed evidence. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir.1997). Plaintiffs point to Domenech's testimony that he often deleted files from his computer[12] and that organizational charts regarding the plant consolidation were disposed of.[13] Plaintiffs' claims on this issue misrepresent the record. With regard to the computer files, Domenech also testified that he would print out a hard copy of the documents on his computer. As to the organizational charts, Domenech testified that the charts were written on large flip-chart paper. Thus, it is understandable that paper of this size would not be copied or filed for further reference. Plaintiffs' allegations of nefarious conduct by T & B regarding discovery are, at best, disingenuous. The record is devoid of any evidence in support of the allegation that T & B destroyed evidence.

WHEREFORE, based on all of the above, the Court grants in part T & B's motion for partial summary judgment (docket no. 49) and dismisses Plaintiffs' third and fourth causes of action. The Court denies the motion for summary judgment with regard to Plaintiffs' first and second causes of action.

**IT IS SO ORDERED.**

---

**12.** Docket no. 53, exhibit A, at 147–51.

**13.** Docket no. 50, exhibit 2, at 68–70.