John **HOGAN** and Stewart
**Rosen, Plaintiffs,**

v.

**METROMAIL, Experian Marketing Solutions, and Metromail Corp. Special Service Plan, Defendants**

No. 99 CIV. 11204 VM.

United States District Court,
S.D. New York.

Aug. 9, 2000.

---

Janice Goodman, Goodman & Zuchlewski, L.L.P., New York, NY, for plaintiffs.

Andrew T. Hahn, Winston & Strawn, Lawrence R. Sandak, Sonnenschein Nath & Rosenthal, New York, NY, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs John Hogan and Stuart Rosen ("Hogan and Rosen") bring this action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621; the New York Executive Law §§ 290 *et seq.* ("State HRL"); the New York City Administrative Code §§ 8–107(1)(a) and (c), and 8–107(17) ("City HRL"); and § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Defendants Metromail, Experian Marketing Solutions, and Metromail Corporation Special Severance Plan ("the Plan") (collectively "Metromail") have moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim on which relief can be granted. Hogan and Rosen, invoking the ADEA and State and City HRL, allege that Metromail engaged in age-based discrimination against them and later in retaliation for their filing of age-discrimination claims. Additionally, Hogan and Rosen allege that Metromail, in violation of ERISA, denied them severance benefits under the Plan.

For the reasons stated below, Metromail's motion to dismiss is granted with regard to the ERISA claim, as well as the ADEA and HRL age-discrimination claims of disparate impact, disparate treatment, constructive discharge and retaliation based on denial of severance pay. Hogan and Rosen are granted leave to replead the ERISA claim, the constructive discharge claim, the retaliation claim based on denial of severance pay and the disparate impact and treatment claims that relate to Metromail's employment actions during 1998–1999. The Court finds the alleged 1997 demotions are time-barred. Metromail's motion to dismiss is denied insofar as it relates to the ADEA and HRL retaliation claims alleging improper denial of ancillary benefits.

### FACTS

Plaintiffs John Hogan and Stuart Rosen, 66 and 64 years old respectively at the time this action commenced, worked for defendant Metromail for almost 30 years. Within three years of their employment by Metromail as salesmen, each was promoted to Regional Director. Compl. ¶¶ 15–16. As Regional Directors, they received commissions on sales and renewals of sales on existing accounts in assigned, exclusive territories. Rosen also supervised other sales people and received overrides, which are commissions based on sales by subordinates. *Id.* ¶ 18.

In January 1997, Metromail adopted a benefits plan ("the Plan"), which provided severance benefits to employees under certain conditions, including "the termination of an Employee's employment with the employer within two years following a Change in Control (i) by the Employer other than for Cause ... or (ii) by the Employee for Good Reason." Compl. ¶¶ 31, 35–36; Sandak Aff., Ex. D at 5–6. "Good reason" specifically included the "reduction by the employer in the employee's salary or a change in the employee's duties or responsibilities in the nature of a demotion." *Id.* Under the Plan, responsibility for discretionary decisions regarding Plan benefits eligibility was assigned to the Human Resources Committee of Metromail's Board of Directors ("the Board").

In October 1997, Metromail demoted all Sales and Regional Directors, including

Hogan and Rosen, to "salespersons," eliminating their eligibility for both staff supervision and corresponding overrides. *Id.* ¶ 19(a). In October 1998, defendant Experian, which had acquired Metromail in March 1998, established a uniform base salary and commission rate for all employees regardless of seniority or experience. *Id.* ¶ 19(d). Experian eliminated commissions on sales renewals and declared open all salespersons' previously exclusive territories, including those of Hogan and Rosen. *Id.* ¶ 19(b) and (c). Hogan and Rosen allege that as a result, senior salespeople, who over prior years had built up reputations and customers in certain geographic areas, faced the prospect of losing customers to competing employees, especially more junior ones. *Id.* In 1999, Experian established an incentive program that awarded bonuses to salespersons who exceeded the individual quotas established for them by management. *Id.* ¶ 18(e). Higher quotas were set for the longer-term salespeople, including Hogan and Rosen, who nonetheless thereafter earned the same base salaries and commissions as more junior sales workers. *Id.* As a result of these changes, Hogan's income was reduced by approximately 33% and Rosen's by 39%, over their earnings from prior years. *Id.* ¶¶ 22–23.

Following Experian's adoption of the 1998 compensation system, Hogan and Rosen submitted claims for severance payments under the Plan, asserting that they were entitled to such benefits by virtue of the change in control from Metromail to Experian and the ensuing reduction of their salaries, duties and responsibilities. The Plan denied the requests. *Id.* ¶¶ 37–40. Although it is not set forth in their complaint, Hogan and Rosen argue, in papers submitted in opposition to Metromail's motion to dismiss, that the severance pay rejection was communicated through letters sent on Experian letterhead, bearing the signatures of Experian officials, and copied to the Board.

In December 1998, Hogan and Rosen retained counsel to raise charges of age discrimination, which were filed with the United States Equal Employment Opportunity Commission ("EEOC") in March 1999. *Id.* ¶¶ 11, 27. The Plan administrators, in August 1999, denied Hogan and Rosen's appeal of the severance benefits denial. *Id.* ¶ 13. Hogan and Rosen claim this denial of severance was made in retaliation for their asserting discrimination claims. *Id.* ¶ 28. They also allege retaliation in Metromail's denial of ancillary employment benefits such as invitations to national sales functions. *Id.* ¶ 29. In August 1999, plaintiffs received "Right to Sue" letters from the EEOC.

Hogan asserts in the factual background paragraphs of the complaint that he was constructively discharged on August 31, 1999. *Id.* ¶ 6. As this allegedly occurred after the EEOC proceeding, it was not included in the EEOC charges. While the allegation is mentioned as a factual matter, the complaint does not set forth constructive discharge as a separate cause of action for relief.

## DISCUSSION

A 12(b)(6) motion hinges on a claim's "legal sufficiency." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). For purposes of the motion, plaintiff's factual allegations are deemed true and all reasonable inferences are drawn in plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). Dismissal is warranted only if it appears beyond doubt that no set of facts offered by plaintiffs could entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Given insufficient pleadings, full dismissal can be precluded by granting leave to replead. *See Stern v. General Elec. Co.,* 924 F.2d 472, 477 (2d Cir.1991).

### A. *ADEA Age Discrimination Claim*

The ADEA protects employees over forty against age-based discrimina-

tion relating to "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). The ADEA is derived from Title. VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. To establish discrimination under either Title VII or the ADEA, plaintiffs must show that defendants' policies or practices caused "disparate impact" or "disparate treatment" affecting conditions of plaintiffs' employment based on their membership in the protected class. *See Criley v. Delta Air Lines, Inc.,* 119 F.3d 102 (2d Cir.1997); *District Council 37 v. New York City Dept. of Parks & Rec.,* 113 F.3d 347 (2d Cir.1997); *Lowe v. Commack Union Free Sch. Dist.,* 886 F.2d 1364 (2d Cir.1989); *Abdu–Brisson v. Delta Air Lines,* No. 94 Civ. 8494, 1999 WL 944505 (S.D.N.Y. Oct.19, 1999). Disparate impact involves a facially-neutral employment practice that has an adverse effect of "fall[ing] more harshly" on a protected class than on one unprotected, while disparate treatment is purposeful, and requires an age-based discriminatory motive. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). ADEA recovery for constructive discharge is also allowed if an employer created "conditions so intolerable as to force involuntary resignation." *Kirsch v. Fleet St.,* 148 F.3d 149, 161–162 (2d Cir.1998).

### 1. *Timeliness*

Defendants move for dismissal of claims based on the 1997 demotions on the grounds that those actions are time barred. The ADEA has a 300 day statute of limitations. 29 U.S.C. § 626(d) and 633(b); *see also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 762–63, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Hogan and Rosen concede that the alleged demotion they claim occurred in 1997 is barred by the 300–day limitation. While events occurring prior to the 300–day limitation period thus may not be considered as the basis for Hogan and Rosen's claims, the Court may, consistent with *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408 (S.D.N.Y.1989), consider them as background material relating to the 1998–1999 claims.

### 2. *Disparate Impact*

Hogan and Rosen allege that Metromail maintained a pattern and practice of discriminating "against older long-term employees." Compl. ¶ 14. This policy is allegedly evidenced by Metromail's restructuring of its sales force and salary and commission structure. Under these alterations all sales and regional directors "who were the longer-term employees" were demoted, denied commissions on renewals of orders built over the years, and had their territories taken away, while also being paid the same base salary and commission rate and assigned higher sales quotas for earning bonuses. Although not specifically articulated the complaint, Hogan and Rosen's theory appears to be that Metromail's older long-term employees were impacted by these employment practices disproportionately in relation to Metromail's younger workers. Metromail contends that this allegation fails to establish the elements of a disparate impact claim in that the discrimination alleged by Hogan and Rosen was based on seniority and experience rather than age. The issue for the Court is whether Hogan and Rosen's allegations as pleaded are sufficient to state a claim for disparate impact discrimination.

██ As a starting point, the Court notes that on their face the Metromail employment practices at issue did not reflect classification by age. As stated in the complaint, Metromail's various employment actions applied to all sales employees, not just those over forty. Nonetheless, a facially neutral policy or classification may have a disparate impact upon the protected class as compared to the unprotected class, and thus may serve as the basis for an impermissible discriminatory action, when the detrimental effect on the protected class is "sufficiently substantial [as to] raise ... an inference of causation." *See*

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (holding that statistical evidence can establish disparate impact for subjective or discretionary employment practices under Title VII); *Lowe*, 886 F.2d at 1370 (applying *Watson* but finding no adequate evidence of disparate impact). A basis for classification may be closely intertwined with age, but that interrelation does not by itself render the classification discriminatory. Courts have distinguished classification by seniority and years of service from that of age, recognizing that longevity of experience may separate older employees from younger ones into groups independently of age. *See Criley*, 119 F.3d at 105 (years of service); *Hazen*, 507 U.S. at 613, 113 S.Ct. 1701 (pension status and years of service). For example, in *Abdu–Brisson*, the court found no disparate impact because seniority was preserved in each group of employees during a merger of two airlines even though there was some difference in treatment across airlines. Since all employees affected by the merger, "whether age 27 or 57—encountered a loss of seniority ..., any 'negative' impact here was felt by both younger and older [employees]." *Abdu–Brisson*, 1999 WL 944505, at *4. Thus, the court concluded that the distinction at issue was based not on age, but on the permissible factor of employees' airline of origin. *Id.*

The Supreme Court has declined to decide whether a remedy for age discrimination under a disparate impact theory is available under the ADEA. *See Hazen*, 507 U.S. at 604, 113 S.Ct. 1701 (finding the disparate treatment doctrine applicable to ADEA claims, but withholding consideration of whether a disparate impact claim is allowed). The Second Circuit, however, recognizes such claims under particular circumstances. *See Criley*, 119 F.3d 102, 105 ("Although the Supreme Court has never decided whether a disparate impact theory of liability is available under the ADEA[,] in our circuit[,] we have recognized such an action"); *District Council 37*, 113 F.3d 347 (relying on pre-*Hazen* precedent to conclude that disparate impact claims are still cognizable under the ADEA); *Lowe*, 886 F.2d 1364 (allowing the claim *only* if the disparate impact falls on the *entire* protected group of employees rather than a subsection, and not if discrimination is only against a group of employees "within" the protected class: those over fifty rather than forty).[1]

In applying disparate impact doctrine and analysis as recognized by the Second Circuit, the first issue for this Court is whether Hogan and Rosen's allegations re-

---

1. While the Second Circuit has acknowledged the Supreme Court's deferral of decision on the issue, *see Johnson v. State*, 49 F.3d 75, 78 (2d Cir.1995) (acknowledging on the basis of *Hazen* the district court's refusal to allow plaintiff to establish an ADEA violation through "disparate impact"), the Circuit Court has considered the validity of disparate impact claims on the assumption that they are possible under the ADEA. Some courts in other circuits have declined to accept the Second Circuit's precedents in this regard, on the ground that this Circuit's doctrine relies upon pre-*Hazen* precedent, and have instead interpreted the Supreme Court's refusal in *Hazen* to consider whether the ADEA allows such claims as an indication that they are impermissible. *See Hyman v. First Union Corp.*, 980 F.Supp. 38 (D.D.C.1997) (holding that as the ADEA prohibits only intentional discrimination, allowing claims of disparate impact would impermissibly broaden the scope of liability); *see also Mullin v. Raytheon Co.*, 164 F.3d 696 (1st Cir.1999) (finding disparate impact claims not recognized under the ADEA at either the federal or state level). The prevailing theory in these cases is that the ADEA protects against discrimination as a result of age-stigmatizing or stereotyping motives, not against neutral practices with a statistically adverse effect upon the ADEA-protected class. *Hyman*, 980 F.Supp. at 45. The congressional focus in enacting the ADEA was on specific practices which "intentionally restrict employment opportunities because of age and not with practices neutral on their face [with] an adverse effect because of age." *Id.*, at 44; *Hazen*, 507 U.S. at 610, 113 S.Ct. 1701 (stating that "Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," which describes protection against disparate treatment, not impact).

late only to a subset of the protected class. Metromail asserts that Hogan and Rosen's theory is inconsistent with the principle of *Lowe* in that their claim would·divide the protected class of employees (those older than forty) into groups of long term employees over forty who are disparately impacted and short-term employees over forty who are not affected. However, the Court finds that Metromail construes the *Lowe* holding too broadly. *Lowe* disapproves of gerrymandering the protected class by *age*, the factor the ADEA protects. The *Lowe* plaintiffs analyzed and claimed substantial impact only in regards to employees over fifty rather than the entire class of those over forty. Hogan and Rosen, however, allege that the compensation changes here challenged imposed a substantial impact on the whole protected class of employees over forty, while effectively favoring the younger ones. To this extent, Hogan and Rosen's claim more closely resembles the issue in *Abdu–Brisson* than that in *Lowe*, as they do not divide employees by age but apply the standard approved of in *Lowe* to focus on all of Metromail's employees to suggest an overall disproportionate impact on "older workers." In other words, Hogan and Rosen allege a "substantial" impact on employees over forty as a whole, on the assumption that Metromail's employment pool contained disproportionally more employees over forty who were long-term and experienced, as opposed to short-term and less experienced.

■ Although arguably Hogan and Rosen's contention may not be foreclosed by the approach the Circuit Court followed in *Lowe*, this Court finds that their assumption that seniority and years of service may serve as a proxy for age lacks facts sufficient to sustain the claim. The complaint offers no factual allegations to support the assumption. This motion to dismiss can be judged only by the content of the pleadings and any fair inferences the Court can draw in Hogan and Rosen's favor. Yet even cast in its most sympa-

thetic light, the complaint is insufficient in alleging age-based discrimination. Repeatedly, to the extent that the complaint ·alludes to impact upon protected employees, Hogan and Rosen's allegations of discrimination refer to Metromail's actions affecting them and the other "older long-term employees," *see* Compl. ¶¶ 14, 19(a) and (e), and to effects suffered by workers on the basis of "years of service" and "experience" rather than strictly age. *See, e.g.*, Compl. ¶¶ 14, 19, and 25. In fact, Hogan and Rosen specifically aver that the provisions of Metromail's new policies applied uniformly to "all salespeople." *See* Compl. ¶ 19(b) and (d). Theoretically, a protected class so generally and broadly defined could encompass employees over forty with twenty years of seniority and experience, as well as those of similar age with only two years of service. Hogan and Rosen argue that while Metromail's policies would apply to both groups, a disproportionate impact would fall on the long-term, more experienced workers like them. But because the restructurings encompassed all salespeople, those who were thirty-nine and under with many years of service and experience were affected just as much.

Whatever special consideration may be extended to the pleadings on a motion to dismiss, the complaint here cannot escape the reading that Hogan and Rosen's theory of disparate impact discrimination separates the protected class of employees over forty by seniority and experience, and alleges disproportionate impact not on all employees over forty as compared to those under forty, as required by Second Circuit doctrine, but only on some—those, like Hogan and Rosen, who, by virtue of "years of service," may have suffered more extensively. It may be that employees over forty predominate the long-term sub-group under which Hogan and Rosen seek protection. Yet that fact is not articulated in their pleadings. Moreover, absent more factual record, even if the more experienced employees are disproportionately over forty, the adverse employment effect

still appears to be due not to age, but to seniority. The Supreme Court in *Hazen*, while acknowledging that older employees on average may have more experience in the workforce than younger ones, also recognized that an employment action grounded on its face in considerations other than age, can be permissible even if these considerations may also correlate with age. *Hazen*, 507 U.S. at 611, 113 S.Ct. 1701.

Hogan and Rosen argue that, as *Hazen* suggests, pension status *can* be proven a proxy for age and that allegations of a correlation, even if assumed, provide Metromail with enough notice of their claim that there is a correlation between age and length of service to allow a finding of disparate impact. *Hazen*, 507 U.S. at 613, 113 S.Ct. 1701. However, Hogan and Rosen's alleged correlation assumes the form of a conclusory assertion and is not backed by any supporting facts. On the contrary, any supposed "substantial" disparate impact upon older employees would not be a function of age but of seniority, which does not offer grounds for an ADEA claim. *See, e.g., Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) (noting that "an environment which is equally harsh ... for both young and old does not constitute a hostile working environment under the civil rights statutes.")

█ In this court's reading of *Hazen*, Metromail correctly interprets the case as suggesting that in a disparate impact claim, age discrimination cannot be inferred from differential treatment based on length of service. Hogan and Rosen argue mistakenly that, although not presumed, the correlation is an issue of fact that a plaintiff should be entitled prove at a trial, or upon a more developed evidentiary record after sufficient discovery. Yet, Hogan and Rosen cannot extrapolate rules of disparate impact theory from disparate treatment analysis upon which *Hazen* was based. *Hazen* at 609, 113 S.Ct. 1701. The *Hazen* Court acknowledges the distinction between the two types of

claims, implying that disparate impact claims cannot automatically borrow and adapt its analysis of disparate treatment. Facially-neutral discrimination based on length of service is not by itself age-based discrimination, and thus does not suffice to sustain an ADEA claim under disparate impact theory.

Conceivably, Hogan and Rosen may be able to reinforce their complaint to allege factual support for age-based as opposed to seniority-based discrimination. For example, though not required in a complaint to overcome a motion to dismiss, statistical evidence, such as that the class of long-term employees contain a disproportionately large percentage of older, ADEA-protected employees, may buttress an inference of disparate impact by age. The Court therefore dismisses Hogan and Rosen's age discrimination claim of disparate impact, with leave to replead factual allegations to support an inference of age-based disparate impact.

### 3. *Disparate Treatment*

Disparate treatment requires that discriminatory *motive* be a "significant contributory factor" in the administration or creation of a policy that treats protected class members more detrimentally than those unprotected. *Lowe*, 886 F.2d at 1369. As described above in connection with the disparate impact allegation, Fed. R.Civ.P. 8(a)(2) requires the complaint to contain only adequate notice of the claim. Plaintiffs can survive a motion to dismiss on a discrimination claim only by "specifically alleg[ing] the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of ... discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994), *quoted in Collazo v. BBDO NY*, No. 96 Civ. 9507, 1997 WL 746447, at *3 (S.D.N.Y.1997) (granting motion to dismiss where plaintiff pled no facts that younger employees received more favorable treatment).

The issue before the Court is the sufficiency of Hogan and Rosen's allegations of discriminatory motive regarding the 1998–1999 modifications of Metromail's compensation system. Metromail alleges that its restructurings reflected equal treatment by age for all long-term employees, and later all salespeople. Hogan and Rosen concede that the changes applied to all sales staff regardless of age. *See* Compl. ¶¶ 14, 19(a), (b)-(d). They assert nonetheless that even given equal treatment, they can prove age-based discriminatory motive by showing that classification by seniority and length of service is a pretext for age-based discrimination. *See* *Hazen*, 507 U.S. at 609, 611, 113 S.Ct. 1701. Hogan and Rosen's argument fails on two grounds. First, the factual allegations pleaded to support the complaint offer no basis for the presumption of a correlation between age and length of service. Consequently, no adequate basis exists for a finding of disparate impact *or* of a discriminatory motive directed at older employees. Secondly, pretext represents the third step in the "shifting burden test" of disparate treatment. To state a sufficient disparate treatment claim, plaintiffs must first fulfill the prima facie burden of showing that they (1) were within the protected age group, (2) were qualified for the job, and (3) suffered from an adverse employment decision, (4) made under circumstances giving rise to an inference of age discrimination by the employer. *See* *Bucknell v. Refined Sugars, Inc.*, 82 F.Supp.2d 151, 155–56 (S.D.N.Y.2000). In later trial stages, once plaintiff has a prima facie case, defendants must proffer a legitimate business reason justifying their actions before pretext is even addressed. *Id.*

Metromail also challenges the pleadings' sufficiency of notice and support of the disparate treatment claim on grounds that they lack concrete factual allegations of discriminatory motive. Metromail points out that Hogan and Rosen allege, based only on "information and belief," that Metromail's revised commission structure was created to "force out older workers." *See* Compl. ¶ 26. On this basis, Metromail claims that the complaint's lack of mention or support of a disparate treatment claim violates Rule 8(a)(2) as well as the Second Circuit's disparate treatment case law as reflected in *Yusuf*, 35 F.3d 709, *Collazo*, 1997 WL 746447, and *Welsh*, 930 F.Supp. 908.

While adequate notice does not require a mention of "disparate treatment" per se, Hogan and Rosen's discriminatory impact and treatment claims are not at all distinguished in the complaint. Rather, the introductory paragraph of the complaint's age discrimination claim alleges, without in any way addressing motive or intent, that Metromail maintains a general "pattern and practice of discriminating against older long-term employees," as a result of which Hogan and Rosen suffered adverse changes to terms and conditions of their employment. Compl. ¶ 14. Implicitly, this allegation suggests almost entirely a disparate impact claim. *Id.* The only remotely factual allegation as to intent is the last line of the claim, which asserts that the structure was created "to force out the older workers." *Id.* ¶ 26. Alone, this reference fails the notice requirement. However, combined with the general allegation that defendants "intentionally discriminate[d] against older workers" *Id.* ¶ 1, and drawing reasonable inferences in Hogan and Rosen's favor, the Court finds enough notice to satisfy Rule 8(a)(2).

The inferential accommodation demanded by Rule 12(b)(6), however, achieves only a partial reprieve of Hogan and Rosen's complaint. Even if it survives minimal notice, a bare allegation supplemented only by information and belief, is not sufficient grounding for a claim of disparate treatment to overcome a motion to dismiss. Under the doctrine of *Yusuf* and related cases, despite an assertion of age discrimination, a lack of factual allegations supporting that inference warrants dismissal under 12(b)(6). *See Yusuf*, 35 F.3d 709;

*Collazo,* 1997 WL 746447 at *3 (finding plaintiff's mere "naked assertion" of age discrimination absent factual basis, insufficient to support a claim). In *Collazo,* plaintiff did not plead *any* facts to support an inference of age discrimination, and failed even to allege that younger employees received favorable treatment. Rather, the complaint contained only a flat assertion of "discrimination on the basis of . . . age." *Id.* at *3.

Thus, neither an unsupported assertion nor factual allegations of disparate treatment based on information and belief, can withstand a motion to dismiss, and as the complaint here contains nothing more, and thus fails on both accounts. It is true that Hogan and Rosen suggest that older employees suffered the effects of Metromail's actions disproportionately, enumerating facts and circumstances which, broadly construed, could sustain their allegation. These pleadings, however, are more consistent with the claim of disparate *impact* (putting aside that they address disparate impact based on seniority rather than on age). Nowhere does the complaint aver facts remotely supporting an allegation or inference of *intentional* age discrimination. To the contrary, the various factual allegations the complaint cites as evidence of Metromail's discrimination, acknowledge that the alterations in terms and conditions of employment applied to "all sales and regional directors" and "all sales people," including plaintiffs. Compl. ¶ 19(a)-(e). On their face, these assertions, without more, could not support an inference of discriminatory motive directed against the protected class of employees over forty.

*Hazen* recognizes that conceptually disparate impact and treatment claims are distinct, making it improper to infer discriminatory motive, and thus disparate treatment, even from a conclusive finding of disparate impact. Additionally, *Yusuf* requires allegations of specific circumstances that could lead to an inference of discriminatory intent, which are not present here. The Court therefore dismisses plaintiffs' disparate treatment claim with leave to replead facts sufficient at minimum to support an inference of discriminatory intent.

### 4. *Constructive Discharge*

█ Constructive discharge occurs when an employer forces an employee to quit by deliberately imposing intolerable working conditions that would cause a reasonable person to resign. A reduction in pay combined with the elimination of substantial employment benefits like sales overrides may constitute such hardship and, combined with evidence of deliberate intent, establish constructive discharge. *Kirsch v. Fleet St.,* 148 F.3d 149, 161–162 (2d Cir.1998). A plaintiff must show that discriminatory motive contributed to the intolerable working conditions either through direct or circumstantial evidence. *See Kirsch,* 148 F.3d at 161. The Second Circuit in *Kirsch* upheld a finding that evidence that a salesman's compensation was reduced, his overrides diminished, and that the employer intended to force the salesman to leave the company, was sufficient to infer discriminatory intent. *See Jimoh v. Ernst & Young,* 908 F.Supp. 220, 226 (S.D.N.Y.1995) (holding that, absent aggravating factors, mere disagreement with employer's alleged business justification for intentional discrimination cannot support a prima facie discrimination claim of constructive discharge).

█ However, plaintiffs must exhaust all administrative remedies before filing a legal claim such as one under the ADEA. *Guillaume v. International Serv. Sys., Inc.,* No. 99 Civ. 9403, 2000 WL 45447 at *3 (S.D.N.Y. Jan.19, 2000) (holding that failure to file with the EEOC prior to commencing action in court renders a legal claim time barred or dismissible for failure to exhaust administrative remedies). An exception to this requirement is recognized if the events cited in the complaint are "reasonably related" to the matters contained in the EEOC charge. *Butts v. City of New York Dep't of Hous. Preservation*

*& Dev.*, 990 F.2d 1397, 1403 (2d Cir.1993) (upholding claim of exclusion from participation in certain departmental conferences as reasonably related to prior EEOC charge which alleged plaintiff's exclusion from agency reorganization, but holding that plaintiff's allegations in the later court action of being a "consistent target for discriminatory practices and denial of promotional activities" were too vague to find reasonable relation to the EEOC discrimination charges). The court in *Butts* identified three kinds of charges allowing reasonable relation: those that (1) fall within the scope of EEOC investigation which are reasonably expected to grow out of the circumstances that gave rise to the EEOC discrimination charge, (2) allege retaliation for filing an EEOC claim, and (3) are based on further incidents of discrimination occurring in the same manner as those described in the EEOC proceedings. *Id.* at 1402–1403.

▆▆▆ Metromail asserts that the complaint cites no allegations of unbearable working conditions, aggravating factors, or deliberate discrimination. However, to the extent the complaint intends to allege constructive discharge, the claim conceivably could be linked to the demotions, to reductions in compensation and responsibilities, to changes in commissions structure and bonuses, and to allegations that Metromail intended to force out older workers. Compl. ¶ 6, 22 and 26. As reduced compensation tied to other circumstances can constitute intolerable working conditions and allow inference of the requisite motive under *Kirsch*, the Court finds that the complaint, if properly framed, could provide sufficient notice of a constructive discharge claim, and of what Hogan and Rosen may have viewed as unbearable working conditions or aggravating factors, to satisfy the pleading standards of Rule 8(a)(2). Given proper notice, the Court would consider whether there is a reasonable relation between a constructive discharge claim arising from the facts in this action and the circum-

stances previously described in the earlier EEOC charge, sufficient to allow the assertion of constructive discharge to proceed in this action. Metromail, citing *Guillaume*, contends that failure to include the claim in the EEOC charge would bar inclusion in the later court action. In countering Metromail's argument on this motion, Hogan and Rosen argue that inclusion was impossible because the alleged constructive discharge occurred after the EEOC charge was filed.

The Court finds that this legal impossibility is a mitigating circumstance supporting the allowance of the constructive discharge claim in this cause of action were it to be specifically pleaded. There is enough reasonable relation, as defined in *Butts*, to allow admissibility of the subsequent claim in the Court proceeding. It is true that Metromail disputes reasonable relation by arguing that the EEOC claim fails to allege the aggravating factors and intolerable working conditions upon which the constructive discharge doctrine rests. However, the facts alleged here that could reasonably support an inference of constructive discharge do not arise from alleged retaliation or further discrimination, but to Hogan and Rosen's own response to the prior and ongoing discrimination as charged in their EEOC filing. Applying the factors described in *Butts*, constructive discharge could reasonably arise from reductions in compensation and responsibilities.

The Court notes, however, that the complaint's only mention of constructive discharge occurs in ¶ 6, which states, referring only to Hogan, that "on August 31, 1999[he] was constructively discharged." No similar allegation is made as to Rosen. Morever, the complaint later sets forth three specific causes of action: age discrimination, retaliation and denial of ERISA benefits. Separately with regard to each of these claims the complaint sets forth three distinct prayers for relief. Thus there is no mention at all in the substantive portions of the complaint of an

additional separate standing cause of action for constructive discharge. Under these circumstances, the Court finds that the complaint as drafted does not give sufficient notice whether the pleading of a claim for constructive discharge as to Hogan, or to both Hogan and Rosen, is intended. Accordingly, the Court dismisses the constructive discharge claim, with leave to replead.

## B. HRL Age Discrimination Claim

The City HRL extends its protections against discrimination to people of all ages equally. The State HRL protects persons eighteen or over. Like the ADEA, they derive from Title VII, 42 U.S.C. § 2000e *et seq.*, and their jurisprudence rests on similar principles, including disparate impact and disparate treatment analysis. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir.1997); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992); *Abdu–Brisson*, 1999 WL 944505. However, because the protected individuals encompass a universe far more expansive than the over-forty age class covered by the ADEA, the difficulty of establishing disparate impact is theoretically greater with regard to HRL claims than to those based on the ADEA. Acknowledging the paradox, the court in *Abdu–Brisson* recognized the improbability of proving discrimination against an entire protected class as compared to the unprotected, as required by the Circuit, if *all* employees are protected. *Abdu–Brisson*, 1999 WL 944505, at *4 n. 4.[2]

To the extent that ADEA and HRL claims are governed by similar standards, dismissal of a federal claim often warrants dismissal of corresponding HRL claims. *See Tyler*, 958 F.2d at 1180 (reasoning that the elements of proof of liability for a case commenced under the HRL are the same as those required under the ADEA);

*Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1158 (2d Cir.1993) (dismissing HRL constructive discharge claim on account of dismissal of corresponding ADEA claim). In any case, the legal insufficiency of the federal claim may indicate that this Court should decline to exercise its jurisdiction over any remaining City or State law claim. *See Morse v. University of Vt.*, 973 F.2d 122, 127 (2d Cir.1992) ("[when] all federal-law claims are eliminated before trial, the balance of factors ... point toward declining to exercise jurisdiction over the remaining state-law claims") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *Corr v. MTA Long Island Bus*, 27 F.Supp.2d 359, 372 (E.D.N.Y.1998) (declining to exercise supplemental jurisdiction over state law claims once the federal claims were dismissed). Accordingly, the sufficiency of Hogan and Rosen's HRL age discrimination claims may be assessed against the determination of disparate impact and disparate treatment analysis, as well as by the effect of preemption under other applicable federal statutes such as ERISA.

An ERISA claim, while usually not foreclosing a related action founded in another federal statute, does preclude many state common law claims involving denial of benefits. *See* ERISA §§ 502, 514, 29 U.S.C.A. §§ 1132, 1144. As applied, these provisions require that if conduct alleged by plaintiff to constitute a basis for a state claim is actionable under ERISA, the state claims are pre-empted. 29 U.S.C. § 1144. *See Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328 (2d Cir.1985) (plaintiff's state claim regarding employer's refusal to pay severance benefits falls under ERISA and is thus preempted). However, the Supreme Court has held that an HRL claim "is pre-empted with respect to ERISA benefit plans

---

**2.** *Abdu–Brisson* labeled this paradox a "threshold defect that emerges under current Second Circuit case law." Although the court dismissed the claim on other grounds, it

acknowledged that given an otherwise valid case, dismissal could be warranted under this paradox. *Id.* at *4 n. 4.

only insofar as it prohibits practices that are lawful under federal law." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Second Circuit has interpreted *Shaw* as holding that an HRL claim "is saved from pre-emption ... to the extent that its protections track those of the ADEA." *Devlin v. Transportation Comm. Intern. Union*, 173 F.3d 94, 100 (2d Cir.1999) (concluding that no part of the HRL claim at issue relating to age discrimination was preempted by ERISA because the claim tracked and was governed by the same standards as the ADEA). Thus, Metromail's argument that ERISA pre-empts Hogan and Rosen's HRL charges fails because those claims of disparate impact, disparate treatment, and constructive discharge also fall under the protection of the ADEA.

The Court finds that the legal insufficiency of Hogan and Rosen's federal ADEA disparate impact and treatment claims, as plead, warrant dismissal, with corresponding leave to replead, of the HRL counterparts. Given the dismissal of the ADEA cause of action, what would remain of the HRL claims asserts age-discrimination on grounds not protected by the ADEA, and thus likely preempted by ERISA. *See, e.g., id.* Under cases such as *Devlin*, the balance of factors may then point to the Court declining to exercise jurisdiction over these remaining claims.

Accordingly, the Court dismisses the HRL disparate impact and disparate treatment claims pending leave to replead in respect of the actions taken by Metromail during 1998–99, which Hogan and Rosen charge gave rise to their complaint. Similarly, the Court finds the HRL constructive discharge claim legally insufficient, and grants leave to replead in accordance with the discussion above pertinent to this claim.

C. *ADEA and HRL Retaliation Claim*

 The ADEA and HRL prohibit employers from retaliating against employees for complaining about discrimination. A prima facie case for retaliation requires (1) that plaintiff was engaged in an activity protected by the ADEA that was (2) known to the employer, and that (3) an adverse employment action was taken against plaintiff (4) that was causally linked to the protected activity. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997). Adverse employment action is not limited to job termination or reduced wages and benefits, but can include minor reprisals that have detrimental effects on an employee's job. *See, e.g., id.* at 465 (acknowledging that adverse actions can be non-wage related, but finding no retaliation on the ground that barring a terminated employee from using an office and phone to conduct a job hunt does not have an "adverse effect" on employment). *But see Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994) ("not every unpleasant matter short of [discharge or demotion] creates a cause of action").

 Uniform, concrete standards have not yet emerged to guide judicial determinations of "adverse action," thus compelling ad hoc findings. *Id.* at 86; *Wanamaker*, 108 F.3d at 466. However, an employer who designates other administrators to manage employment benefit plans and who fully delegates authority to decide eligibility for benefits, is excluded from liability as to retaliation claims arising out of adverse decisions by those executives. *See, e.g., Lee v. Burkhart*, 991 F.2d 1004 (2d Cir.1993) (holding that an employer who designates a plan administrator is no longer liable as de facto administrator). As stated above with regard to the Hogan and Rosen's age discrimination claims, to the degree that the sufficiency of ADEA and HRL complaints must be measured against similar pleading standards, the dismissal of a federal claim signals similar treatment of the related state claims. The same rule obtains in respect of retaliation claims filed under both ADEA and HRL. *See Wanamaker*, 108

F.3d 462 (upholding dismissal of pendent state HRL law claim for age discrimination due to failure to state an ADEA claim of retaliation).

While ERISA claims often preclude state common law claims, it does not preempt related claims under the ADEA. ERISA specifically does not "alter, amend, modify, invalidate, impair, or supersede any law of the United States ..." 29 U.S.C. § 1144(d); *see also Hazen,* 507 U.S. 604, 613, 113 S.Ct. 1701, 123 L.Ed.2d 338 ("we [do not] rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status."); *Reichman v. Bonsignore,* 818 F.2d 278 (2nd Cir.1987) (affirming judgment for plaintiff on ADEA and ERISA claims).

■ Hogan and Rosen's retaliation claim concerns denial of ancillary job benefits such as invitations to conferences. Metromail does not dispute this claim. Though not based on wages, job termination or major benefits, the claim may be actionable. *See Wanamaker* 108 F.3d 462. The ability to attend national sales conferences may affect an employee's current job prospects. This benefit could contribute to developing new business contacts, and provides opportunities to gather information about new products and selling techniques. Recovery and damages for denial of these job benefits do not conflict with ERISA claims. Consequently, the Court finds that a retaliation claim based on such denial is legally sufficient.

■ The Court also finds that Hogan and Rosen's second retaliation claim, based on alleged denial of severance pay, if properly plead, also may be substantively sufficient to withstand a motion to dismiss. Metromail, relying on *Lee,* first asserts that, because it delegated its plan benefit determination authority, it is not the proper defendant as regards this claim and that it was "the Plan" and not Metromail that denied Hogan and Rosen severance pay.

The Court finds this argument unpersuasive. For the reasons discussed below in connection with the ERISA claim, the court holds that Metromail may be a proper party to the retaliation claim.

■ Metromail further argues that an ERISA action for severance pay precludes a retaliation claim based on denial of the same severance pay, and, alternatively, that the severance pay retaliation claim is a pretext to bypass the ERISA "arbitrary and capricious" test that applies to the denial of benefits for the more lenient ADEA "shifting burden" test. The Court disagrees. The ERISA claim per se does not bar other federal actions, like the ADEA retaliation claim, that deal with severance benefits. *Hazen* and related cases, as well as ERISA itself, clearly establish that a party can raise both federal statutes in the same complaint, and that each is to be considered on its own merits. *See Hazen,* 507 U.S. at 613, 113 S.Ct. 1701.

The Court, however, finds that, even if Metromail is a proper party to Hogan and Rosen's claim of severance pay retaliation and the action is not barred by ERISA, the claim as set forth in the complaint is insufficient. For the reasons described below regarding the ERISA severance pay action, the pleadings as now framed fail to establish the necessary causal link between the adverse employment action and the protected activity because Hogan and Rosen do not assert that they actually terminated their employment at the time they applied for severance pay. The Court grants leave to replead this claim to the same extent described below.

**D. *ERISA Claim***

Hogan and Rosen's third claim is that Metromail's denial of severance pay benefits for which they were eligible under the Plan violates ERISA § 502(a)(1)(B). That provision authorizes severance pay for workers who terminate their employment in response to a change of control of the employer that leads to demotion and/or reduced pay. 29 U.S.C. § 1132(a)(1)(B).

At issue in this motion are Metromail's assertions that neither defendants nor plaintiffs here are proper parties under ERISA for the purposes of Hogan and Rosen's severance pay claim.

### 1. *Proper Defendants*

■ Proper defendants for ERISA purposes are a Plan and its administrators, trustees and fiduciaries. 29 U.S.C. § 1132(a)(1)(B). *See also Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998) (insurance company not liable as de facto administrator as it was not the Plan's designated administrator or trustee); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 139–43 & nn. 8–10, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (discussing how ERISA allows suit for breach of fiduciary duty on behalf of a plan). A "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting management of [a] plan." 29 U.S.C. § 1002(21)(A)(i); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (control need not be entirely discretionary). An employer, the de facto administrator, is exempt from liability if it delegates discretionary authority to another party. *See Crocco,* 137 F.3d at 107.

■ In reviewing challenges to denial of Plan benefits, courts generally give deference to the administrators' decisions, applying an "arbitrary or capricious" standard of review and looking only at the administrative record.[3] *See Lee,* 991 F.2d at 1010 (designating "another party" as

administrator exempted the employer insurance company, which assisted in the company's self-funded Plan management, from full and joint liability with the named administrator) (citing with approval *McKinsey v. Sentry Ins.,* 986 F.2d 401, 404 (10th Cir.1993)). The administrator's decision may be overturned only if it is made without reason, unsupported by substantive evidence, or is erroneous by law. *Wojciechowski v. Metropolitan Life Ins. Co.,* 75 F.Supp.2d 256 (S.D.N.Y.1999). As the ERISA claim here involves denial of benefits, and as Metromail delegated Plan decisions and authority in part to the Board, the *Firestone* "abuse of discretion" standard is the proper test in this case.

Hogan and Rosen first argue that because the employer is always the administrator of the Plan, Metromail is a proper defendant here. In turn, Metromail contends that Hogan and Rosen's complaint accused the Plan and not the employer, of denying severance pay. *See* Compl. ¶ 13 ("*the Plan* denied plaintiffs' appeal from *its* adverse ruling denying benefits")(emphasis added). Metromail adds that the Plan is not a valid party because the ADEA refers to the employer as wronging "*his* employees," implying that the employer must be a person. 29 U.S.C. § 623(d) (emphasis added). Yet, applying the guidance of *Crocco,* this Court believes the Plan is a valid defendant in Hogan and Rosen's ERISA severance pay claim. Moreover, Hogan and Rosen do not allege that the Plan is the employer, but that it is

---

**3.** If there is no delegation, or if the appointed administrator has a severe conflict of interest, the arbitrary and capricious review becomes de novo and the employer may be more easily found liable. *See DeFelice v. American Int'l Life Assurance Co.,* 112 F.3d 61 (2d Cir.1997) (given a conflicted administrator, the court should look at evidence outside the administrative record); *see also Boesel v. The Chase Manhattan Bank,* 62 F.Supp.2d 1015, 1030 (W.D.N.Y.1999) (a conflict of interest warrants de novo review if the decision was unreasonable and the administrators were influenced by the conflict, but a conflict does not necessarily exist merely because an adminis-

trator is an "arm of the employer"). The court can admit evidence outside the administrative record given a conflict, though the conflict "need not cause the actual prejudice." *DeFelice,* 112 F.3d at 67. However, *Firestone* applies de novo review to the denial of benefits regardless of a conflict of interest, but when "the benefit plan gives the administrator discretionary authority to determine eligibility or construe the terms of the plan," the Court uses the "abuse of discretion" standard, under which the conflict is "weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 103, 109 S.Ct. 948.

an administrator, again making it a proper party under ERISA. Not only did Metromail create the Plan and Experian adopt it, but Hogan and Rosen's allegation that "the Plan" was responsible for the action that gave rise to the ERISA claim necessarily implies that it was the Plan's *administrators*, namely the Board, who were responsible.

 The most narrowly framed question for the Court raised by this claim is therefore whether Metromail as employer can be liable as de facto administrators or fiduciaries of the Plan. The answer turns upon the extent of Metromail's delegation of discretionary authority to the Board. Metromail, citing *Crocco* and *Lee*, claims that its written appointment of the Board as administrators, set forth in the Plan, excludes Metromail from liability. Hogan and Rosen respond that the Board is not "another party" under *Lee*, but that its affiliation with Metromail demonstrates that Metromail in fact did not relinquish administrative responsibility over the Plan. In support of their argument, Hogan and Rosen also assert that their denial of benefits was written on Experian letterhead by Experian authorities, and they point out that the Board was sent only copies of the denial letter, suggesting that Metromail, as the employer, retained at least partial discretionary authority. While it may be that the Board made the decision and Experian staff simply reported it to Hogan and Rosen, it is also very possible that the Board, composed of Experian Managers, issued a recommendation and Experian made the final decision. In the latter case, defendants could be liable as de facto administrators and fiduciaries. *See Crocco*, 137 F.3d 105; *Lee*, 991 F.2d 1004. Because all reasonable inferences must be drawn in plaintiffs' favor on a motion to dismiss, the Court assumes the latter theory and finds that Hogan and Rosen have stated a sufficient claim concerning Metromail's liability for decisions under the Plan to entitle them to conduct discovery to establish a factual basis adequate to take

any remaining disputes on this score to a jury.

Even if Metromail did delegate discretionary authority to the Board as Plan administrators, the Court finds a possible conflict of interest. Hogan and Rosen contend that a conflict of interest existed both because the Board consists entirely of employees of Metromail, and because the Board's dual responsibilities actually conflict. Although being the "arm of an employer" does not alone create a conflict of interest, *see Boesel*, 62 F.Supp.2d at 1029 (W.D.N.Y.1999), Hogan and Rosen also allege that the Board is primarily responsible for the maximization of profits. Distributing severance benefits while simultaneously trying to maximize profits paves the way for a bias against granting benefits. *See Wojciechowski*, 75 F.Supp.2d at 262. Assuming this allegation to be true for the purposes of this motion, the Court considers that a conflict of interest is quite possible. The Court finds, by virtue of the lack of clarity over the degree of delegation of responsibility under the Plan, as well as by the fact that a conflict of interest in the Board could have contributed to its denial of Hogan and Rosen's request for severance benefits, that Metromail is a proper party for the purposes of Hogan and Rosen's ERISA claim.

### 2. *Proper Plaintiffs*

The Court finally considers whether Hogan and Rosen qualify as proper plaintiffs for the purposes of their ERISA claims. Metromail contends that the purpose of ERISA's severance pay provision is to ease the risks of unemployment by supporting discharged employees in seeking new jobs, and that Hogan and Rosen are ineligible because they were employed at the time they commenced this lawsuit, and remained employed thereafter. *See Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2d Cir.1992) (declaring that awarding severance pay to employees who did not change their jobs and were not out of work would

lead to a windfall); *see also Garvin v. AT & T*, 174 F.3d 1087 (10th Cir.1999) (employees with the same job before and after a change in employer control cannot collect severance pay from the former employer even if they lose benefits); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir.1994) (only employees "permanently laid off for lack of work" are entitled to severance pay under ERISA). While the *Headrick* court emphasized that an employee retaining his job does not suffer for lack of work and should not be eligible under ERISA, *id.* at 1276, it also acknowledged that there is no "formal rule that a period of unemployment or a decrease in income or benefits is an immutable precondition to recovery of severance pay," *id.* at 1272, suggesting that grounds may exist for an appropriate exception.

Hogan and Rosen distinguish the caselaw relied on by defendants on the grounds that the employees in those cases were suing their displaced employer for severance pay despite retaining their jobs with the new employer after the change in company control. In each of these cases, because the employee intended to remain employed, receipt of severance pay would have been a windfall. In addition, the cases cited above assumed that actual involuntary termination of employment would qualify for severance benefits but did not consider whether voluntary termination, as alleged in the present case, would afford employees control over the ability to quit. This difference may distinguish cases holding actual employment termination to be a condition precedent to eligibility for ERISA-protected benefits sufficient at least to withstand a motion to dismiss. In addition, Hogan and Rosen note that they were the beneficiaries of a contractual provision in the Plan that enabled them to claim severance in the event of *voluntary* separation for good reason due to demotion or reduction of pay following a change in control.

Hogan and Rosen were employed at the time they filed for severance but claim that they intended to resign as soon as they received their severance pay, that they had so informed Metromail and the Plan Administrator, and that they never claimed entitlement to severance benefits under the Plan while remaining employed. Although Hogan and Rosen assert this intent in the papers opposing Metromail's motion to dismiss, it is expressed nowhere in their complaint. In fact, read at face value, the relevant provisions of the complaint support Metromail's theory. These pleadings state flatly that Metromail reduced Hogan and Rosen's salaries and changed their duties and responsibilities in the nature of demotions, in each case "thereby entitling them to severance payments." Compl. ¶¶ 38–39. There is no mention of their satisfying the requirement of the Plan that severance pay is awarded when "employment is terminated."

On this motion, the Court cannot go outside the pleadings to infer Hogan and Rosen intent at the time they filed their severance application or to speculate what they may or may not have told Metromail and the administrators regarding their plans to resign, or to extrapolate their understanding that they were not entitled to severance benefits while still employed. For these reasons, the Court finds the pleadings deficient and grants Metromail's motion to dismiss. However, the Court grants Hogan and Rosen authority to replead and thus supplement the fact of their continued employment, with their alleged intent to quit upon receiving severance pay. The Court also recognizes that, under ERISA, Hogan and Rosen may be entitled to declaratory relief with regard to future benefits. *See* 29 U.S.C. § 1132(a)(1)(B) (allowing a plaintiff to bring action to "clarify his rights to future benefits under the terms"); *Smith v. Dunham–Bush*, 959 F.2d 6, 10 (2d Cir.1992) (holding that ERISA relief can be administered through a declaratory judgment of entitlement to benefits). Accordingly, Hogan and Rosen are also granted leave to

amend the complaint to clarify their right to declaratory relief.

### CONCLUSION

The Court dismisses Hogan and Rosen's complaint in part for failure to state a claim on which relief can be granted. The Court finds the ADEA and HRL claims of age discrimination insufficient under both disparate impact and treatment doctrine, and Hogan and Rosen are granted leave to replead these claims insofar as they relate to Metromail's actions occurring in 1998–1999. Claims relating to events of 1997 are dismissed as time-barred. The court dismisses with leave to replead the ADEA and HRL constructive discharge claims and upholds the claims alleging retaliation through denial of certain job benefits. The ADEA and HRL retaliation claim and ERISA claim relating to denial of severance pay are dismissed, with leave to replead the claim and/or to seek declaratory relief.

SO ORDERED.