**John HOGAN and Stewart Rosen, Plaintiffs,**

v.

**METROMAIL, Experian Marketing Services Solution, and Metromail Corporation Special Severance Plan, Defendants.**

No. 99 Civ. 11204(VM).

United States District Court, S.D. New York.

April 18, 2001.

Janice Goodman, Goodman & Zuchlewski, L.L.P., New York City, for plaintiffs.

Andrew T. Hahn, Winston & Strawn, New York City, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

### BACKGROUND

In this action plaintiffs John Hogan and Stewart Rosen ("Hogan and Rosen") allege age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 19 U.S.C. §§ 623, *et seq.,* denial of severance pay benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* and retaliation based on denial of severance pay and ancillary job benefits. Defendants Metromail, Experian Services Solution, and Metromail Corporation Special Severance Plan (collectively "Metromail") moved to dismiss under Fed. R.Civ.P. 12(b)(6) all counts of Hogan and Rosen's initial complaint. In a decision dated August 9, 2000, this Court granted Metromail's motion as to all counts except the retaliation claim based on denial of ancillary job benefits, with leave for Hogan and Rosen to amend.

Hogan and Rosen later filed an amended complaint in which they endeavor to cure the deficiencies the Court noted in its dismissal decision. Currently before the Court is Metromail's subsequent Partial Motion to Dismiss which reasserts the argument that Hogan and Rosen have failed to state a claim of age discrimination under the ADEA. Hogan and Rosen respond that they have added facts in their amended complaint that indicate a correlation between job seniority status and age and thus create an inference that the employment actions complained of had a disparate negative impact on older employees.

The facts of this case are set forth in this Court's earlier decision, familiarity with which is assumed.[1] Here, the Court will briefly review facts most relevant to the age discrimination claim as amended.

Plaintiffs Hogan and Rosen, aged 66 and 64 respectively, worked as Regional Directors for Metromail for almost thirty years. In that capacity, they received commissions on sales, renewals of sales in their assigned, exclusive territories, and overrides from sales by junior representatives in those territories. In October 1997, Metromail eliminated all sales and regional director positions, abolishing the eligibility for corresponding overrides. A year later, when defendant Experian acquired Metromail, the company introduced a uniform base salary for all employees and declared all previously exclusive territories open to all salespeople. At the same time, Metromail also established higher quotas for longer-term salespeople as part of an incentive program that awarded bonuses to those who exceeded the individual quotas. As a result of these changes, Hogan and Rosen's earnings decreased significantly from their income of prior years.

In granting the original motion to dismiss, this Court found that Hogan and Rosen's age discrimination claim lacked facts sufficient to indicate that Metromail's alleged actions resulted in a disparate impact on all employees over forty, as opposed to impacting only some longer-term employees, who, due to their seniority at Metromail, suffered more extensively. The Court granted Hogan and Rosen leave to replead factual allegations to support an

---

1. The decision is reported in *Hogan v. Metromail,* 107 F.Supp.2d 459 (S.D.N.Y.2000).

inference of age-based disparate impact of Metromail's changed employment practices, suggesting that one means of doing so might be to reinforce their complaint by articulating specific statistical evidence that would indicate a correlation between the age and length of service of the employees most affected.

Hogan and Rosen filed an amended complaint in which they added factual allegations that indicate that Metromail's more experienced salespeople are disproportionately over forty. Amended Compl. ¶¶ 21(b-e). The amended complaint alleges that of 35 salespeople aged forty and above, 25(80%) had worked for five years or more at Metromail, while only 2(10%) of the 20 salespeople below forty had five years or more experience. Amended Compl. ¶ 21(c). While these statistics alone do not answer whether the more experienced people are disproportionately over forty, reading the figures in conjunction with other facts alleged in the amended complaint indicates that out of Metromail's 30 senior employees, 28 were over forty and only 2 were below forty.

In the Partial Motion to Dismiss, Metromail maintains that its employment practices applied equally to all salespeople, and not solely to salespeople over forty. As a result, Metromail contends that any adverse employment impacts caused by its practices are attributable to seniority and not to age. Metromail also asserts that statistical evidence alleged in the amended complaint is not sufficient to raise an inference of causation between employment practice and adverse employment effect because of membership in a protected group.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), this Court must accept as true all well-pleaded factual allegations set forth in the complaint. *See Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Dismissal under Rule 12(b)(6) is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999) (internal quotation marks omitted).

## DISCUSSION

The Supreme Court has not conclusively resolved the issue of whether a disparate impact theory of employment discrimination is available under the ADEA. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Absent a dispositive Supreme Court determination, it is settled in this circuit that such action may be pursued. *See Criley v. Delta Air Lines,* 119 F.3d 102, 105 (2d Cir.1997) (citing *District Council 37 v. New York City Dep't of Parks and Rec.,* 113 F.3d 347, 351 (2d Cir.1997)).

Claims of disparate impact involve facially neutral employment practices that fall more harshly on one protected group of employees and cannot be justified by business necessity. *See Hazen,* 507 U.S. at 609, 113 S.Ct. 1701. Disparate impact claims suggest "practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). To state a prima facie case of disparate impact under the ADEA, a plaintiff must demonstrate (1) the occurrence of a facially neutral employment practice, and (2) a significantly adverse or disproportionate impact of a practice on a group of employees of age forty or above. *See District Council 37,* 113 F.3d at 351–352; see also *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). ("Statistical data may be admitted to show a disparity in outcome between groups, but to make out a prima

facie case the statistical evidence must be sufficiently substantial to raise an inference of causation.").

■ Once the plaintiff establishes a prima facie case, the burden of proof shifts to the employer to demonstrate that the alleged discriminatory employment practice may be justified by business necessity. *Smith v. Xerox Corporation*, 196 F.3d 358, 365 (2d Cir.1999) (citing *Griggs*, 401 U.S. at 432, 91 S.Ct. 849). If the employer successfully defends the employment practice by the business necessity doctrine, the employee then bears the burden of showing that the employer's employment practice and business necessity explanation constitutes a pretext for age discrimination.[2] *Id.*

■ The issue before this Court is whether the statistical evidence Hogan and Rosen provided in their amended complaint is sufficient to raise an inference that Metromail's practice disparately impacted employees of age forty or above because of their membership in the protected class. The Supreme Court recognized in *Watson* that in assessing disparate impact claims "significance" or "substantiality" of statistical disparities is best judged on a case-by-case basis. *Watson*, 487 U.S. at 994–995, 108 S.Ct. 2777.

Here, Hogan and Rosen have presented statistical evidence to indicate both that there is a correlation between the factor of age and the group affected by the challenged employment practices, and that disproportionately the members of the protected group were adversely affected by Metromail's actions.

Hogan and Rosen allege facts indicating that the sub-group of employees who had five or more years of experience with Metromail consists predominantly of employees over forty. Specifically, they assert that 28 out of the 30 employees with five years or more of experience who were affected by the Metromail's practice are forty or above. This fact indicates a correlation between age and length of service, which, reviewing the pleadings in the light most favorable to Hogan and Rosen and drawing reasonable inferences in their favor, could support an inference that Metromail's challenged practices disproportionately affected employees over forty.

Moreover, Hogan and Rosen's statistics also suggest that a disproportionate number of employees within the overall protected age group at Metromail were affected by Metromail's employment practices. Eighty percent of employees aged 35 and above allegedly suffered negative employment effects from the challenged changes in Metromail's employment practices.[3] Al-

---

**2.** The Second Circuit in *Smith* noted that an employee may show that both the employment practice and business necessity explanation are merely a pretext for age discrimination: "For example, if the plaintiff can show that another practice would achieve the same result at comparable cost without causing a disparate impact on the protected group, she has proven pretext." *Smith*, 196 F.3d at 365.

**3.** The Second Circuit in *District Council 37* used an alternative statistical analysis. The court compared the representation of the protected group within the work force with the percentage of the protected group within the

group of negatively affected population to determine whether the detrimental effect of employment practice was "sufficiently substantial" as to raise "an inference of causation." See *District Council 37*, 113 F.3d at 351–352. Hogan and Rosen allege facts indicating that employees aged forty or above represent 63% of the total work force at Metromail, while 93% of employees negatively affected by the challenged employment practices were employees of forty and above. These statistics, although not ample, may raise a further inference of causations sufficient to defeat a motion to dismiss.

though the statistical basis for these allegations remains inconclusive, it is sufficient to raise a possible inference that the disparate impact fell upon employees by virtue of their membership in the protected group.[4] See *District Council 37*, 113 F.3d at 352 ("A plaintiff can establish a prima facie case of disparate impact by showing that at the bottom line, a challenged employment practice has a significant disparate impact on a protected class of which the plaintiff is a member.")

Based on the foregoing disparate impact analysis, this Court concludes that Hogan and Rosen have alleged sufficient statistical support in their amended complaint to raise an inference of disparate impact on the protected class of employees aged forty or above. In light of these factual allegations, this Court cannot say that it appears beyond doubt that the Hogan and Rosen can prove no set of facts in support of their claim which would entitled them to relief. *See Flaherty*, 199 F.3d at 612. Whether Hogan and Rosen ultimately will prevail on their claim is a fact-intensive matter which requires discovery and cannot be determined on a motion to dismiss.

## ORDER

For the reasons set forth above, it is hereby

**ORDERED** that Metromail's Partial Motion to Dismiss is denied; and it is further

**ORDERED** that the parties confer and developed a proposed Case Management Plan for review with the Court at a conference on April 30, 2001 at 2:30 p.m.

---

4. In *Watson*, the Supreme Court took note of an enforcement rule in the Federal Equal Employment Opportunity Commission's Uniform Guidelines on Employee Selection. Procedures, See 29 CFR pt. 1607 (1984) ("Guidelines"), under which disparate impact would not ordinarily be inferred unless the members of a particular protected group are selected at a rate less than 80% of the rate at which the group with the highest rate is selected. *See Watson*, 487 U.S. at 995 n. 3, 108 S.Ct. 2777. The Court observed that this Guideline, which has engendered some criticism, has provided nothing more than a rule of thumb for the courts. See *id*. The Court further recognized that "courts appear generally to have judged the 'significance' or 'substantiality' of numerical disparities on a case-by-case basis" and expressed the belief that "such case-by-case approach properly reflects [the Court's] recognition that statistics 'come in infinite variety and ... their usefulness depends on all of the surrounding facts and circumstances.'" *Id*. (quoting *Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). The Ninth Circuit in *Katz v. Regents of Univ. of Cal.*, 229 F.3d 831, 836 (9th Cir.2000) held that evidence demonstrating that roughly 27% of employees were adversely impacted by the employer's challenged decision was not enough to raise an inference that the disparate impact fell upon employees by virtue of their membership in the protected age group.